# SPRAGUE S. STETSON

*v.*

# THE CHICAGO AND EVANSTON RAILROAD COMPANY.

1. INJUNCTION — *to restrain railway company from constructing and operating its road in street until damages to adjacent lots are ascertained and paid.* Where a railway company under authority from a city has located its road upon a public street or other lands not belonging to the complainant, and is constructing the same upon which to operate its trains, a court of equity will not entertain a bill to restrain the operation of the road until the complainant's damages to lots owned by him abutting on the street are ascertained and paid, but will leave him to his remedy at law.

2. STREETS —*preventing their use for railroad purposes.* It may be regarded as the settled law of this State that an owner of an abutting lot cannot prevent the use of a street for a railway when such use is permitted by the city and is authorized by an act of the legislature. This is upon the principle that the adjoining proprietor has no interest in the fee of the street. But where the fee of the street remains in him subject to the public easement, the rule is different, for the reason that the railway in such case is an additional burden upon his land.

3. EMINENT DOMAIN — *what is meant by property damaged.* The words, in the act relating to the exercise of eminent domain, "which may damage property not actually taken," relate to contiguous lands of the same owner, a part of which only are taken, so that when the party seeking condemnation has not embraced all the owner's contiguous lands not actually taken, but damaged, the owner may file a cross petition and have the damages to the other lands assessed. But even in that case the damages must be direct and physical and result from the taking of a portion of his land.

4. Under this act where no portion of a party's land is taken or sought to be condemned for use, he is not entitled to have proceedings instituted to ascertain what damages his property will sustain by the construction and operation of a railway upon other lands adjacent to his. But in such case he will be left to his action at law to recover compensation for any actual damages he may sustain.

WRIT OF ERROR to the Superior Court of Cook county.

This was a bill in chancery, by Sprague S. Stetson against the Chicago and Evanston Railroad Company, for an injunction.

Messrs. HITCHCOCK & DUPEE, for the plaintiff in error.

Messrs. Goudy & Chandler, for the defendant in error.

Mr. Justice Scott delivered the opinion of the Court:

Under a special charter, and by permission of the city of Chicago granted by ordinance, the Chicago and Evanston R. R. Co. constructed its railroad upon Southport avenue in front of a block of ground owned by complainant, which had been subdivided into lots, some of which fronted on the avenue, with a view to use cars on its road propelled by steam. No part of complainant's land had been taken for the use of the road. The right to relief is predicated on the alleged fact, the construction of the railroad track had depreciated and decreased the value and price of lots fronting on the avenue; that the running of trains of cars and locomotives would further diminish the value and price of lots, and would render access inconvenient and difficult. A motion for a preliminary injunction was denied, and a demurrer having been sustained to the bill, it was dismissed for want of equity.

No direct or physical injury has been done to complainant's property. The track was constructed wholly upon the street, the fee of which is in the city of Chicago. It may be regarded as the settled law of this State, an owner of an abutting lot cannot prevent the use of a street for a railway when such use is permitted by the city and is authorized by an act of the legislature. It is equally well settled, the abutting owner is not entitled to any compensation for the new use of the street. *Moses* v. *The Pitts., Ft. Wayne & Chic. Ry. Co.*, 21 Ill. 522; *Murphy* v. *Chicago*, 29 ib. 280.

The doctrine of these cases in this particular has not been departed from, but on the contrary, has been expressly affirmed in the recent case of *Stone* v. *Fairbury, Pontiac & N. W. Ry. Co.*, 68 Ill. 394. The principle is, the adjoining proprietor has no interest in the fee of the street and therefore cannot recover for an injury to it. Where the fee of the street, however, remains in the abutting land owner a recovery has

been permitted, for the reason the railroad is an additional bur-
den, on the principle, if the land was dedicated, it was for the
use of ordinary travel, and if it was condemned, the damage
was assessed with no other view.   *Ind., Bloomington & Western*
*R. R. Co.* v. *Hartley et al.* 67 Ill. 439.

Whatever damages, if any, the complainant has suffered,
are consequential, and arise from the lawful use of the adjoining
street, in which he has no interest except an easement in com-
mon with the public.   The question, therefore, of most import-
ance is, whether equity will assume to enjoin the use of the
railroad upon the street, until the land-owners' damages shall
have been assessed and paid under the eminent domain law, or
will he be remitted to his remedy at law.   The constitutional
provision is, that "private property shall not be taken or dam-
aged for public use without just compensation.   Such compen-
sation, when not made by the State, shall be ascertained by a
jury as shall be prescribed by law."   Manifestly all proceedings
for the condemnation of private property for public uses, are at
law, and accordingly the general assembly has provided by
general law how such proceedings shall be commenced and
conducted.   Eminent Domain Act, 1872.

The mode of procedure is definitely pointed out.   Where
the right to take private property for the construction of any
railroad or other public use, or which may damage property not
actually taken, has been conferred upon any corporate authority,
and such corporation cannot agree with the owner as to such
just compensation, it is made the duty of the party authorized
to take or damage such property to file a petition describing the
property, and asking to have the compensation assessed.   What
construction shall be given to the words in this act, "which
may damage property not actually taken," involves some diffi-
culty, unless they are understood to refer to contiguous lands
of the same owner, not actually taken.   A portion of the land
having been taken, the remainder may be damaged in consequence
of the taking.   Where the party seeking to make the condemna-
tion has not embraced all of the owner's contiguous lands, not

actually taken, but damaged, the owner may file a petition in the nature of a cross petition, and have his damages for land not actually taken assessed in the same proceeding.  *Mix* v. *L. B. M. R. R. Co.*, 67 Ill. 319.

It must be in this sense the word " damaged" is employed in the act to provide for the exercise of the right of eminent domain.  The damages are direct and physical, and result from taking a portion of the land.  But where no portion of the land is taken, and the damages suffered are consequential, by reason of what the corporation does upon its own land or that of another, it does not seem there is any warrant for instituting proceedings for the ascertaining of such damages.  In the case at bar, one allegation in the bill is, the company denies the owner of the adjacent land has sustained any damage, and it seems absurd the company shall be required to file a petition alleging the owner has sustained damage.  Without such allegation, what would there be to try ?   No land is sought to be condemned, and the company contest the fact of consequential damages.   Where land itself is taken, it always has some value, and that gives the court jurisdiction of the cause.   It would be a singular proceeding if the corporation should file a petition alleging the owner of land in proximity to a public improvement had sustained no damage, and ask the court to adjudicate upon it.

A case analogous in principle arose under the road law, prior to the adoption of the present constitution.  It is the case of *Hoag* v. *Switzer et al.* 61 Ill. 294.  The commissioners had laid out a highway adjoining and abutting the premises of complainant, but no portion of his land was taken.  The highway was constructed on lands of another, in which he had no interest.  He filed a bill to prevent the highway commissioners from opening the road until his damages should be assessed and paid.  It was decided he was not entitled to have the question of damages considered by the commissioners of highways at the time they laid out the road, nor was it necessary any assessment should be made of the damages he may have sustained before

the road could be legally opened.   The principle of that case has its application to the case at bar.   How can it be known before the completion of the railroad what damages, if any, the complainant will sustain, and how could the same be measured ? He has not been compelled to part with any of his private property, and whether he will sustain damage by reason of the construction of the road, is a matter that must be determined by proof of the consequences that will follow.   The construction of the road-bed, and the operation of trains, may or may not injuriously affect his property.   That question can more appropriately be determined in an action at law.   Such cases can be referred to no general head of equity jurisdiction.

It is not claimed, any portion of his property has been taken or is about to be seized.   What injury, if any, he has sustained, may be compensated by damages recoverable by an action at law.   Because a party would sustain consequential damages by the construction of a railroad, constitutes no reason why the company may not enter upon its own lands, or any other lands in which he has no interest, to construct its road.   The company would not be bound to stop and litigate the question of damages with every one who may claim to be injured.   Were this the law, it would be found to be utterly impracticable to construct any railroad or other public improvement within any reasonable time.   The case of *Hoag* v. *Switzer et al. supra*, is to this effect.   We have been referred to no case where this exact point was involved, that holds any such doctrine as that contended for.   The question did not arise in *The People* v. *McRoberts*, 62 Ill. 43, and what is said in the opinion is not to be understood as being on this subject.   It has more appropriate reference to compensation for land taken and damages to contiguous lands of the same owner not actually taken, but damaged.

In *Hall et al.* v. *The People*, 57 Ill. 307, it was held no man could be compelled to part with his property without just compensation, and that no corporation, public or private, could rightfully appropriate private property to its own use without

first tendering or paying the damages assessed under the forms of the law. A party ought not to be driven to an action against a corporation, responsible or irresponsible, for his damages. This would be to take his property without first making compensation, and would be a plain violation of a constitutional right. But the damages alluded to are such direct damages as are incident to or naturally flow from the taking of private property for public uses. No allusion is made to, nor can the principles of that case be applied to consequential damages not the result of taking private property. It was never intended to apply the principle to the latter class of cases.

English statutes contain provisions in substance the same as the statute we are considering, and have been the subject of judicial construction. A leading case is *Hutton* v. *The London and S. W. R. W. Co.*, 7 Hare, 26. It was ruled in that case, in the event of damage to a party whose lands are not entered upon, but are injuriously affected by the exercise of the powers of a railway company upon their own lands or upon the lands of another party, and for which compensation is required to be made by section 6 of the Railway Clauses Consolidation Act, 8 Vict. C. 20, it is not unlawful for the company to execute the works which occasion the damage, before the amount of compensation for the same is ascertained, paid or deposited. Under the Land Clauses Consolidation Act, 8 Vict. C. 18, in case of purchasing land, or damage directly consequent upon the purchase, the act is explicit. The damages in the latter case must be ascertained, and both price and damages must be paid before entry, but in regard to damages given by 8 Vict. C. 20, to one person, consequential upon the exercise of the powers of the company upon its own land or upon the land of other persons not complaining, a different rule prevails. The doctrine of *Lester* v. *Lobley*, 7 A. & E. 124, cited by the Vice-Chancellor, is that it is not unlawful for the company to commence work within its powers, which might be attended with damages to others, before making compensation for such expected damages. The reason given is, the impracticability in many cases of

knowing whether damage will be sustained or not, and of measuring it if it were certain. Upon the authority cited, the conclusion of the court in *Hutton* v. *The London and South-western R. W. Co.*, was, the acts of the company in proceeding to construct its works within its powers without first making compensation to the party claiming to have sustained consequential damages thereby were not unlawful, and hence there was no ground for the interference of a court of equity.

Our statute to provide for the exercise of the right of eminent domain admits of the same construction. Where lands have been taken for public use, the value of the land itself, and such damages as result directly from the taking to other lands of the owner not actually taken, must be assessed, and both price and damages paid or tendered before the right of entry exists, but where the damages are consequential upon the entry of the company upon its own lands or upon the lands of others not complaining, the rule is different. The company, in the latter case, is not bound to make compensation for expected damages before entering upon the work it has a lawful right to do under the powers conferred by its charter. The party will be left to his action. When he has settled the question of his right to damages, and ascertained the measure in an action at law, if any reason exists why he cannot have execution of the same, equity will assist him, but not before. *Dunning* v. *City of Aurora*, 40 Ill. 480 ; *Bliss* v. *Kennedy*, 43 ib. 67.

Holding, as we do, there is no ground for the interference of a court of equity, it will not be necessary to discuss any other question in the case. The injunction was properly denied, and the decree dismissing the bill will be affirmed.

*Decree affirmed.*