The Peoria and Rock Island Railway Company

*v.*

Peter Schertz *et al.*

1. Chancery jurisdiction—*enjoining use of railroad on street.*  A court of equity will not assume jurisdiction to enjoin the use of a railroad track upon a public street until the adjoining landowner's damages shall have been assessed and paid under the Eminent Domain Act, and this though the railway company may be insolvent.

2. Eminent domain — *compensation for injury to property not taken.* Under the Eminent Domain Act, an adjoining landowner, where no portion of his land is actually taken, or sought to be condemned for public use, is not entitled to have proceedings instituted to ascertain what damages his property may sustain in consequence of the construction and operation of a railway upon contiguous or adjacent lands in which he has no interest.

Appeal from the Circuit Court of Peoria county; the Hon. J. W. Cochran, Judge, presiding.

This bill was filed in the Peoria county circuit court, by the heirs at law of Frederick Muller, with whom is joined Peter Schertz, executor of the estate, against the Peoria and Rock Island Railway Company, the Indianapolis, Bloomington and Western Railroad Company, the Peoria and Springfield Railroad Company, and the city of Peoria, for an injunction and relief.    No injunction was asked, nor was any granted, before final hearing of the cause.

Frederick Muller, in his lifetime, was owner and in possession of lots one and two in block 49 in Bigelow and Underhill's addition to the city of Peoria, on which he had made valuable improvements.    These lots are situated at the intersection of Bridge and Water streets, and have their easterly border on the Illinois river.  Water street is parallel with the river, three hundred feet west, is one hundred feet wide and has been a public highway since 1836.  Bridge street crosses Water street at right angles, is one of the principal streets in the city, and terminates at the wagon bridge over the Illinois river in the vicinity of this property.   Improvements on these lots consist

of two brick store-rooms and a dwelling house. One of the store-rooms has two front doors of like construction, one opening on Water street and the other on Bridge street, with windows towards both streets. The other store-room joins the latter in the direction of the river, and has its doors and windows all opening on Bridge street. The dwelling house fronts on Water street, and its front door and all windows open only in that direction.

Under some authority prior to July 29, 1870, various railroad companies had located and constructed four tracks along Water street, using all the street, it is alleged, that could be spared for that purpose. One of these tracks is twenty-eight feet from the pavement on the west side of Water street, and the most easterly one was laid nine feet and ten inches from the curbstone in front of this property.

It is alleged that about July 29, 1870, the Peoria and Rock Island Railway Company, with the other railroad companies named, procured the passage of an ordinance, by the city council of the city of Peoria, which authorized it to construct and maintain a railroad track, between certain points indicated on Water street, on the southerly side of the tracks previously laid in that street in front of this property, subject to the restriction, " the track shall be constructed with respect to the rights of property owners on the south side of Water street, either by contract or condemnation according to law, before proceeding to lay a track." No consent was ever obtained from the owner of this property to laying of the track, but on application of the railroad company, commissioners were appointed to make an assessment of damages the property owners would sustain. An assessment was made, which was not satisfactory, and, on appeal by owners, the whole proceedings were dismissed in the circuit court for want of jurisdiction. Nevertheless, the company laid its track upon Water street, in front of this property, between the curbstone and tracks previously laid by other companies, perhaps removing a portion of the curbstone in so doing. Since the track was laid, it has been constantly used by the several railroad companies.

One other allegation is, " there is danger the city of Peoria will further authorize, aid and assist said railroad companies to damage and injure orator's property, unless prevented by injunction."

The prayer of the bill is for a perpetual injunction on final hearing, enjoining defendants from using, operating, continuing or maintaining such track, or running or standing cars or engines thereon; that they be required to remove the track so laid, and replace grading, paving and curbing as formerly situated; also for decree and judgment for damages sustained; and if the court shall be of opinion defendants, or either of them, have a right to locate, build and operate such track upon assessment and payment of damages, then that defendants be enjoined, and compelled to proceed at once to make and pay such assessment according to law, or as the court may direct; and that defendants may be enjoined and restrained from the use and occupation, or entering upon such tracks or running cars or engines thereon, until they shall cause such assessment to be made and paid.

An amendment to the bill charges that the Peoria and Rock Island Railway Company is insolvent; that a judgment at law for injuries sustained could not be collected; and that the hazard and danger to the property, from fire, is greatly increased from the proximity of the track, rendering the buildings liable to be set on fire by sparks thrown from engines.

Issues of fact were submitted to a jury, the principal ones being the second and fourth, to which the jury returned, first, that complainants had sustained damages by reason of the location, construction, maintenance and operation of the Peoria and Rock Island Railway, in the sum of $800; and, second, the property of complainants had derived no benefit from the location, construction and operation of such railroad.

On final hearing, the court decreed: First, that, prior to date of decree, complainants had sustained damages to their property in the sum of $800, by reason of the location and construction of the railroad, and that they have execution therefor; second, that unless the Peoria and Rock Island Rail-

way Company, within thirty days, institute proper legal proceedings, under the Eminent Domain Law, to condemn and acquire the right, as against complainants, to construct and maintain their railroad track, and thereafter prosecute such proceedings with due diligence to final decision, and pay such damages as shall be awarded, then such company shall proceed at once to remove its track and superstructure of its road, and restore Water street to its former condition, and in default thereof, the company shall be perpetually enjoined from using its track, or suffering the same to be done; and should the company fail to comply with the decree in this respect, the sheriff is directed to remove the track and superstructure, so that such street might be restored to its former condition.

Only the Peoria and Rock Island Railway Company complains of the decree, and the case is brought up on its appeal.

Messrs. Ingersoll & Puterbaugh, for the appellant.

Mr. H. B. Hopkins, and Mr. J. H. Morrow, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

Elaborate and exhaustive arguments have been made on every phase of this case as presented by the record, but we think the decision rests upon the determination of a single question, viz: whether equity will assume jurisdiction to enjoin use of a railroad upon a street until the adjoining landowner's damages shall have been assessed and paid under the Eminent Domain Act. Since the decision in *Stetson* v. *Chicago and Evanston Railroad*, 75 Ill. 74, this can not be regarded as an open question in this court. It was there definitely declared, the acts of a railway company in proceeding to construct its road, within its charter powers, in a street in a city, under a license granted by ordinance, without first making compensation to an abutting landowner claiming to have sustained consequential damages thereby, are not unlawful, and hence there is no ground for interference of a court of

equity.   It would serve no purpose to repeat the reasoning by which that conclusion was reached.

In this case, as in that, it was contended, under that clause of section 13, article 2, of the constitution, which provides " private property shall not be taken or damaged for public use, without just compensation," all abutting landowners are entitled to have such consequential damages as they may sustain, assessed and paid, before a railroad company can acquire any right to put down and operate a track in a public street, and that putting it down without such assessment and payment is a violation of law.   But in our former decision it was distinctly ruled, such company was not bound to make compensation for consequential or expected damages that might result to others, previous to entering upon its own land, or lands of others not complaining, to do work it has a lawful right to do under powers conferred by its charter.   It was declared that, under the Eminent Domain Act, passed in pursuance of the provision of the constitution cited, where no portion of his land was actually taken or sought to be condemned for public use, such adjacent owner is not entitled to have proceedings instituted, to ascertain what damages his property might sustain in consequence of the construction and operation of a railway upon contiguous or adjacent lands in which he has no interest.   English statutes contain provisions, in substance, the same as our Eminent Domain Law, and have received the same construction.

The case we are considering affords another striking illustration of the reasonableness of the rule announced.   One subject of contention between the parties is, whether complainants' property has suffered any deterioration, or has been damaged in any way by reason of the construction and operation of the railway in the street in front of it.   The company maintain, no injury has been done, and it would be an anomaly in judicial proceedings if the corporation should present a petition alleging the adjacent property has sustained no damages, and ask to have that question adjudicated.   It will be observed, the decree in this case imposed upon the railway com-

pany the duty to "condemn and acquire the right to construct and operate" its road in the street.    That right it already had, under its charter from the State, and a license granted by ordinance.    But what was there to condemn?    No part of complainants' land was taken or wanted for public uses, and whether consequential damages would result to the owners from the construction of a railway on other lands, is a matter of evidence.    As we have seen, the fact a party has or might sustain injury indirectly, constitutes no valid reason why a corporation may not enter upon its own lands, or upon lands of others in which he has no interest, to construct a railway or other public improvement.    That is this exact case.    The objectionable track is constructed wholly in the street, the fee of which is conceded to be in the municipal corporation granting the license.    No property of complainants has been taken for public uses, nor is there any reason for condemning any portion of it; and if the owners have sustained any damages as a result from what the railroad company has done, under its charter, on other lands under a license from the owner of the fee, redress can be had in an appropriate action at law.    Such cases can be referred to no general head of equity jurisdiction.    As was said in *Stetson* v. *Chicago and Evanston Railroad*, *supra*, the party complaining will be left to his action at law.    When he has settled the question of his right to damages, and ascertained the measure, if any reason exists, as, on account of insolvency, why he can not have execution of the same, equity will then assist him by injunction or otherwise, but not before.

The decree will be reversed, and the bill dismissed at costs of complainants.

*Decree reversed.*


Mr. Chief Justice Sheldon, dissenting:

Upon the footing of the city ordinance in this case, if on no other ground, I regard the complainants as entitled to relief. The condition of the ordinance granting to the company permission to lay its track in the street was, by its fair meaning,

Sheldon, C. J., Dickey, J., and Breese, J., dissenting.

that abutting lot-owners should be paid the damage to their property on account of the railroad, to be ascertained by contract or condemnation before laying the track. The company availed itself of the permission, and laid its track without performing the condition. I think the company should be held bound by the condition, and that equity should take jurisdiction to enforce the performance by the company of the condition of the ordinance. I consider it as improper, in this proceeding, to render a separate judgment for particular acts of damage which had been done, but there should have been an assessment of the entire damage to the property, by reason of the construction and operation of the road, once for all. I do not regard it as essential, to have required a new and distinct proceeding to have been formally taken under the Eminent Domain Law; but the court might, in this same proceeding, have caused the damage to be ascertained by a jury; that that would have sufficiently accomplished the substantial purpose of the condition of the ordinance.

Mr. Justice Dickey: I think the cause should be remanded. The complainant is, in my opinion, entitled to relief in the mode suggested by Mr. Chief Justice Sheldon. Whether the view of the Chief Justice as to the construction of the ordinance be correct or not, it is my opinion that the insolvency of the defendants presents sufficient ground for the intervention of a court of equity, without waiting for complainant to establish his claim for damages in an action at law.

Mr. Justice Breese: I concur with the Chief Justice.