(*Circuit Court of Cook County. In Chancery.*)

## Vanderpoel, et al.

### vs.

## The West and South Towns Street Railway Company.[1]

(March, 1894.)

1. STREET RAILROADS—FRONTAGE CONSENTS. Under the act of March 30, 1887, it is necessary to the validity of a grant of the city council to a street railroad of the right to use the streets that the petition upon which the council acts shows the consent of a majority of the owners of all private property in each mile and any fraction thereof petitioning for the construction of the road, if the petition shows such majority the action of the city council cannot be attacked except for fraud.

2. INJUNCTION—CONSTRUCTION OF RAILROAD. A property owner cannot maintain a bill to restrain the construction of a railway track in a public street. The injury is to the public and a private individual cannot file a bill on behalf of the public.

3. SAME—UNAUTHORIZED CONSTRUCTION. Even though the railroad is being laid without valid municipal authority or ordinance, a property owner cannot maintain a bill for an injunction. It must be left to the municipal authorities to remedy the wrong.

4. SAME—EFFECT OF FRONTAGE LAW. The frontage law was intended, however, to provide a remedy for the property owner where there is an unauthorized invasion of a street by a railroad company.

5. SAME—MAJORITY CONSENT. But this remedy cannot be availed of where the majority of the frontage of the mile in which the complainant's property is located petitions for the laying of the railroad. This is true even though the ordinance is otherwise invalid.

6. DAMAGES—BOND. Where the question is solely one of damages, or the right of complainant is not clear, the court may deny an injunction and require the defendant to give bond to secure the complainant against loss or damage.

7. FRONTAGE CONSENTS—PROPERTY OF STEAM RAILROAD NOT CONSIDERED. In determining whether a majority of the abutting owners have consented to the laying of a street railroad, the frontage occupied by a steam railroad abutting on such street should

[1] The above case was cited with approval in the following cases: *Tibbetts v. Railway Company*, 54 Ill. App. 188; *Stewart v. Railway Company*, 58 Ill. App. 461, 462.

not be taken into consideration in determining the total front-
age, as steam railroads are considered as public highways.

8. MOTIVE OF COMPLAINANTS. The court will consider the motives
of complainants where there is evidence that the litigation is
not being prosecuted in good faith and for the protection of
complainants' rights, and the complainants withhold informa-
tion which would enable the court to pass upon the charge.
Under such circumstances where complainants' rights are other-
wise doubtful, an injunction will be denied,[1]

9. LACHES. A bill will not lie to restrain the construction of a
street railway where the complainant delayed until a consid-
erable portion of such railway had been constructed.

10. SAME—KNOWLEDGE OF ORDINANCE. Such laches is not excused
because the complainant did not know of the invalidity of the
ordinance. The complainant is chargeable with notice of any
defects, in the petition of the property owners, the proceedings
of the city council, or the city ordinance, which are apparent
on the face thereof.

Motion to dissolve injunction. Heard before Judge Mur-
ray F. Tuley.

For statement of facts see opinion.

*W. P. Black, C. D. F. Smith* and *Thomas A. Moran,* for
complainants.

*Peck, Miller & Starr,* for West and South Town Street Rail-
way Co.

*William S. Johnson,* assistant corporation counsel, for city
of Chicago.

TULEY, J.:—

Motion to dissolve injunction upon the defendant giving
bond and security to pay all damages sustained by the com-
plainants:

On the 8th of February, 1892, the city council of Chicago
passed an ordinance granting the corporation known as the
West and South Towns Street Railway Company a right to
construct a single or double track railway in West Twenty-
second street for a distance of about five miles. The com-
pany entered upon the construction of its road, and at the

---

[1] See also *Taylor v. Pullman Company,* 1 Ill. C. C. 24, and note.—
Ed.

time of the filing of this bill had constructed about five miles of track. The charter of the city of Chicago was amended by the act of March 30, 1887, and provides that the city council shall have no power to grant the right to lay down any railroad tracks in any street of the city to any steam, dummy, electric, cable, horse or other railroad company except upon the petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes, and when the street or part thereof sought to be used shall be more than one mile in extent, no petition of land owners shall be valid unless the same shall be signed by the owners of the land representing more than one-half of the frontage of each mile and of the fraction of a mile, if any, in excess of the whole miles, measuring from the initial point named in such petition of such street or of the part thereof sought to be used for railroad purposes.

One of the complainants owned 100 feet of frontage and the other 75, upon West Twenty-second street, and filed this bill for an injunction against the construction of the road. The injunction was recommended upon hearing before the master and has been twice before this court and the action of the master sustained. There is much new evidence produced on this motion on the part of the defendant, and the case is presented in a different aspect from what it heretofore has been.

The ordinance of the city council is attacked, as illegal, upon the ground, among others, that the city council did not have, prior to the passage of the ordinance, a petition for the occupation of the street by the railroad company signed by the owners of land representing more than one-half of the frontage of each mile, and of the fraction of a mile, of said Twenty-second street, measuring from the initial point named in the petition upon which the council professed to act, and attacks particularly the frontage of the mile in which complainant's property is situated and commencing with the west line of May street, that mile being the second mile of the line of road under the city ordinance as passed. The evidence

tends to show that in the first mile counting from the initial point, to-wit: Portland avenue named in the petition which was before the council, there was upon the face of the petition a shortage of several hundred feet.

In the second mile, the initial point being Portland avenue, there was on the face of the petition a shortage, unless in counting the frontage about 2,700 feet on the north side of Twenty-second street occupied by the Chicago, Burlington and Quincy railroad with its tracks should be excluded. In the remainder of the route there was on the face of the petition an apparent majority of the frontage signed for each mile. The ordinance as actually passed by the council, made Grove street about 1,100 feet west of Portland avenue the starting point.

With Grove street as the initial or starting point there was a shortage on the face of the petition in the first mile, and as to the second mile on which complainant's property is situated, there was also a shortage on the face of the petition, but excluding the 2,700 feet and treating the engine lot of 35 feet belonging to the city, as being private property, there was a majority of a few feet of frontage in that mile in favor of the railroad. It is insisted by the defendant that the city council was to judge of the sufficiency of the petition, and it having found that there was a sufficient frontage signed, its action is conclusive upon all persons.

I am clearly of the opinion that it is absolutely necessary to give validity to the grant of the city council to the railroad company that the petitions upon which the council acts must show a majority of all private property in each mile and fraction thereof petitioning for the construction of the railroad. If a petition on its face shows such majority, the decision of the council as to the frontage and its ordinance granting the franchise, cannot be attacked except for fraud.

It would be competent to show forgery or unauthorized signature to the petition, or other fraud tending to vitiate the petition and all action had thereon. Whether a bill for an injunction in such case would be the proper proceeding it is not necessary to decide. But, admitting this ordinance might

be held invalid for the want of a sufficient petition or for fraud in connection therewith, in a proper proceeding by the proper party, there is a farther question in his question, which is: Can these petitioners maintain this bill for an injunction?

The control of the streets and alleys of the city is vested in the city council for the public interest and also it is the council's duty to protect owners of lots fronting on the streets and alleys in the enjoyment of their rights, incident to such frontage, but if the council fail in this duty, under what circumstances can such frontage owners have a standing in a court of equity for an injunction to protect them against an unauthorized invasion of the streets by the railroad company? A lot owner cannot file a bill on behalf of the public; such a bill must be brought by the city or the attorney-general. And could he before the passage of this frontage law, file such a bill on his behalf?

The Moses case in the 21st Illinois (*Moses v. P. F. W. & C. R. Co.,* 21 Ill. 516), and the Stetson case in the 75th Illinois (*Stetson v. C. & E. R. Co.,* 75 Ill. 74) are leading cases to the effect that no property owner can maintain a bill for an injunction as to the laying of a railroad track in a street where the same is authorized by the state and municipal authorities. The theory of the decisions being that the railroad is only an additional method of using the public streets, and that the injury to the property owner is only such as is suffered by the public at large; in other words, that he sustains no special damage, and therefore cannot bring a bill for an injunction. *Chicago v. Union B. Association,* 102 Ill. 379; *Peoria & R. I. R. Co. v. Schertz,* 84 Ill. 135.

If, however, the railroad is being laid without valid municipal authority or ordinance, could a property owner maintain a bill for an injunction before the passage of the frontage law referred to?

*Patterson v. C., D. & V. R. R.,* 75 Ill. 588, is a decision to the effect that he could not, but that where there has been an unauthorized invasion of the street under a pretended ordinance, it must be left to the municipal authorities to remedy the wrong, and that the private owners cannot maintain an

injunction therefor, but must be left to their remedy at law. The frontage law, however, was intended to give the property owner some protection and some standing in court for an unauthorized invasion of a street by a railroad company.

It limits the power of the city to act, and declares in effect that there shall be no railroad laid down in the street if the property owners owning the majority of the frontage in any one mile or fraction thereof, shall refuse to petition therefor. It recognizes a right in the street appurtenant and incident to the ownership of property fronting the street, but what of the extent of that right?

The question here is: Has a property owner any right to object if the majority of the frontage of the mile in which his property is located petitions for the laying of the railroad, or, in other words, can he in such case sustain a bill for an injunction, even though the ordinance passed by the council may be invalid? I apprehend not. So far as he is concerned, when the majority of his mile petitions, he stands just where he did before the passage of the frontage act, and that is on the authority of the Patterson case, without the right to ask in his own suit the aid of an injunction. *Truesdale v. Peoria Grape Sugar Co.,* 101 Ill. 561.

The motion here is that the defendant be allowed to give bond to secure complainants in their damages.

I understand it to be a common practice to take such bonds in cases where there is only the question of damages, and in all cases where the laying of the railroad tracks is unauthorized, and the right of the complainant to maintain his bill is clear and beyond the question the court will not balance the damages, or the convenience and inconvenience of the parties as to granting or withholding an injunction, but if the right of the complainant is not clear the court may do so. The protection of private property and private interests against unauthorized encroachment is absolutely necessary for the maintenance of civilized society, and no one is more tenacious of doing so than I am.

But in this case I have grave doubts as to the right of the complainants to maintain this bill for an injunction. This

doubt arises upon the question whether the 2,700 feet of frontage occupied by the Chicago, Burlington and Quincy Railroad (on this motion for the first time brought to the notice of the court) should be considered as mutual property, like street intersections, and not counted in making up the amount of private frontage on the street. The design of the law was to protect private property, and excluding this 2,700 feet, there was a clear majority of the frontage (counting from the initial point named in the petition) in the mile in which complainant's property is situated, petitioning for this railroad to be laid in the street. If there was such a majority, I am of the opinion that complainants have no standing for an injunction.

The constitution declares all steam railroads to be public highways. We have then 2,700 feet of a railroad adjoining the street highway. The object and intent of the frontage law was not to protect one railroad against another and competing one. It is said, however, that the Chicago, Burlington and Quincy right of way is only a public highway for railroad purposes, but it may be fenced, and no owner of adjoining property can step upon it without being guilty of a trespass. Why should then the consent of such owner be necessary as to the use of Twenty-second street, which he cannot reach without committing trespass on the Chicago, Burlington and Quincy railroad highway? The protection of property so located is not within the reason or purpose of the law, and what is not within the reason of the law, should be held to be not within the law.

There is also another consideration which has moved the court in considering the motion of the defendant, and that is, the grave doubt arising upon the evidence submitted, whether or not this bill is prosecuted in good faith, and for the protection of complainant's rights. There is also evidence tending to show that this is being prosecuted for speculative purposes.

There is an affidavit of E. F. Cullerton, to the effect that the complainant, Brundage, told him that he and the other complainants were going to see Mr. Black, the solicitor, about

putting up a bond in his case, and wished his (Cullerton's) advice; that he knew he was being used by Yerkes, an officer and stockholder in the West Chicago Street Railway Company; that he wanted to be certain that he was not going to lose anything, or his property, in the deal; that he (Cullerton) told Brundage that it would be "landed against him" (Brundage); that he had been used by Yerkes to defeat this improvement (meaning the laying of the street railway in Twenty-second street) and that "you," meaning Brundage, are a "sucker unless you get paid for it." That Brundage replied "that is what I wanted to talk to you about," that, thereupon, he (Cullerton) told Brundage to make him (Yerkes) pay $5,000, but that probably the solicitor representing the company would "cut you down to $2,500;" that Brundage replied, "Now, I am glad I had this talk with you, and I am going right over there and make just such arrangements as that, or else they don't use me or my property." Cullerton also swears that Brundage said his son had got him into the litigation, and that his son had been paid $50 by a certain party to so influence his father. Brundage denies the latter allegation quite positively, but he does not attempt a specific denial of the words Cullerton swears to his having used.

He makes a denial in general terms of Cullerton's affidavit, but admits that Cullerton did suggest to him that he ought to make Yerkes pay $5,000 for making this fight and that he, Brundage, replied, "that if Yerkes was behind the suit, he was a good man to have behind it;" that he has an impression that he, Brundage, said further, laughingly, that "if the said Yerkes was backing the suit, that he was a good man to pull, and affiant would pull him for all he was worth."

The affidavit of Charles L. Bonney alleges that when Bonney charged Yerkes with being behind the institution and prosecution of this suit, Yerkes did not deny the same, but replied: "Certainly that meets with my approval." But the affidavit of Yerkes is a full and complete denial of Bonney's affidavit. There are other affidavits to the effect that both of these complainants had stated that this suit was not

costing them a cent.    They deny having so stated and allege
that they are prosecuting the suit in their own interests, but
with assistance rendered by other property owners.    They
fail to give the names of such other property owners or to
give any details as to the number of such persons or the ex-
tent of their contributions.

In the face of the attack made upon the good faith of these
complainants in the prosecution of this suit, and charging in
substance that they are not the real parties in interest, their
showing is not satisfactory.    When a party seeking the aid
of this court suppresses or conceals or withholds information
which would enable the court to pass upon the merits of so
grave a charge, he cannot complain if the court, in the exer-
cise of its discretion, denies him the use of the prohibitive
writ of injunction to protect his alleged rights.    Upon the
grounds that there are grave doubts as to the rights of these
complainants to maintain a bill for an injunction for the rea-
sons hereinbefore specified, and because the proof tends to
show that the complainants are prosecuting this suit for other
purposes than the protection of their own property rights the
court will grant defendant's motion.

I wish also to state that I am inclined to the opinion that
the laches of complainants in filing this bill is also a sufficient
ground for the granting of this motion.    They knew of the
progress of this work, and laid by until nearly five miles of
track was laid, about 1,100 feet of which was in the mile in
which complainant's property is situated, before they filed
this bill.    It is true that they swear they did not know of
the invalidity of the ordinance and that on a former motion
to dissolve where the evidence there submitted shows defend-
ant to be a mere trespasser, I held that such want of knowl-
edge excused the complainant's laches.    Upon reflection, how-
ever, I am now of the opinion that they must be charged with
notice of informality or defects in the petition of the prop-
erty owners, the proceedings of the city council and the city
ordinance, which may be apparent upon the face thereof.

The city of Chicago also now comes into court and moves
this court that the motion of the defendant street railway

company be granted. A bond with sufficient security will protect complainants against actual loss, and under the circumstances, I am convinced that it is the duty of this court upon the defendant railroad company entering into bond with security to be approved by the court in the sum of $25,000 to pay the complainants and each of them all damages that they may respectively suffer by reason of the construction or operation of this railroad track, to dissolve the injunction.

An order may also be prepared to that effect, and the order may also provide for setting aside the reference to the master heretofore entered, at defendant's cost, however, the order to avoid any question as to the matter being in the control of the court. A re-reference to the master can be had hereafter if desired.