## Alexander M. Stewart v. Chicago General Street Railway Co.

1. STREETS—*Rights of Abutting Owners—Public Interests—Attorney General.*—If the abutting owner is entitled to enjoin the use of a public street, it is because of his private right; he can not assume to, because he does not represent the public. The attorney general is the only proper representative of the public, and in suitable cases, bills may be by him maintained to protect public interests.

2. SAME—*Suit of Individual Owners of Abutting Property.*—The difficulty with a proceeding at the suit of individual owners of abutting property, to either restrain or compel the use of a public street for a particular purpose, is that such suit concludes no one but the parties to it.

3. SAME—*Duty of the Attorney General.*—The attorney general is the proper party to represent the public, and a bill will not lie at the instance of an individual, to restrain the doing of that from which the complainant will suffer no damage other than that which the public sustains.

4. SAME—*Interests of Abutting Owners in the Street.*—The abutting property owners do not own the fee of the street. The street is held by the public authorities in trust for the use of the public. The abutting owner has a right of access to his property, a right to the light and air that naturally come to his premises from the public way, but the use of, or to control the use to which the street may be put, he has no more right than any of the other millions for whose convenience the highway exists. If, by reason of the taking of the street for a new public use, his property is specially damaged, he is entitled to recover such damage in an action at law.

5. SAME—*Railroad Tracks Therein—Power of Public Authorities.*— Before the public authorities can give to any one the right to lay railroad tracks in a public street, the consent of a majority of the owners of abutting property must be had, and with such consent, the right to put down such tracks can only be given for public purposes. The street is servient to the public, for its use, and neither by the authorities of the city, nor by the consent of the abutting owners, can the public be excluded therefrom.

6. ABUTTING PROPERTY OWNER—*Does Not Represent the Public.*—While an abutting property owner can not assume to represent the public, and by his individual suit for damages, special and peculiar to himself, conclude its rights, he has, under the constitution and laws of this State, a remedy at law for special damages he may sustain.

7. SAME—*Special Damage to.*—The fact that by permission to use the street for a particular purpose, an abutting property owner will be specially damaged, affords no ground for restraining such use, so long as the property owner is able to recover and collect all the damage he suffers.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Submitted at the March term, 1895. Affirmed. Opinion filed April 22, 1895.

## STATEMENT OF THE CASE.

The bill in this case is stated in the abstract of the record to be as follows:

Bill of complaint by Alexander M. Stewart, filed November 26, 1894, that he is the owner of fifty feet of frontage on Lawndale avenue, Chicago; that the West and South Towns Street Railway Company is incorporated under the laws of Illinois, commonly called the act in regard to horse and dummy railways; that on February 8, 1892, the city council of Chicago, on the petition of said company and the petition of the owners of more than one-half of the frontage of so much of the street sought to be used for railway purposes, passed an ordinance granting authority to construct a railway on Lawndale avenue past the premises owned by complainant; that said railway is constructed and in operation; that the Chicago General Street Railway Company is also incorporated under said act in regard to horse and dummy railways; that said West and South Towns Railway has granted to said Chicago General Street Railway Company the right to operate an electric trolley railway over the tracks above described; that said Chicago General Street Railway Company is about to enter into the use of said street without any petition whatsoever of the owners of land representing any part of the frontage of said street, and without any ordinance or authority whatsoever of the city, its sole authority for such use of said street being the pretended lease of said West and South Towns Railway.

That any use of said street for railway purposes by said Chicago General Street Railway Company without said petition of owners and without any authority from the city council is contrary to clause 90, Sec. 62, Chap. 24, R. S., being the act relating to incorporation of cities and villages.

That there is no authority under the law for said West and South Towns Railway to lease any of its privileges and no authority for said General Street Railway to take or acquire the same.

That there is no authority in the act under which said company is incorporated to operate any other motive power than horse and dummy locomotion.

Prayer for process and injunction to restrain appellant from the use of Lawndale avenue, etc.

Exhibit A, Sec. 1. Ordinance of the city of Chicago, granting West and South Towns Street Railway, its successors and assigns, authority to construct and operate a railroad on Lawndale avenue from 22d street to 35th street. Section 3 authorizes the operation of cars by animal or cable power, electric, compressed air or gas motors.

To this a special demurrer, interposed by appellee, was sustained, and the bill dismissed for want of equity.

John J. Coburn, attorney for appellant.

Appellee's Brief, C. L. Bonney and Peck, Miller & Starr, Attorneys.

The abutting property owner's right to use the street is no greater than that of each and all of the public. He is but one of the millions composing the public, and unless he sustain from the use to which the street is put by the municipal authorities, a damage, special and peculiar to himself, he can not maintain a suit to compel the abandonment of such use; he can not assume to represent the public, and by his individual suit conclude its rights. Davis v. Mayer, 2 Duer, 663; Winterbottom v. Lord Derby, 2 Law R. Ex. 316; Hartshorn v. South Reading, 3 Allen 501; McDon-

ald v. English, 85 Ill. 232; High on Injunctions, Sec. 762; Pomeroy's Eq. Juris., Sec. 1379; City of East St. Louis v. O'Flinn, 119 Ill. 200; City of Chicago v. Union Bldg. Ass'n, 102 Ill. 379; Patterson v. C. D. & V. Ry. Co., 75 Ill. 588; Vanderpoel et al. v. The West & South Towns Ry. Co., Chicago Legal News, March 24, 1894.

For damage, special and peculiar to himself, an abutting property owner has, under the constitution and laws of this State, a remedy at law. The fact that by permission to use the street for a particular purpose an abutting property owner will be specially damaged, affords no ground for restraining such use so long as the property holder is able to recover and collect all the damage he suffers. Vanderpoel v. The West & South Towns Ry. Co., *supra;* Loire v. North Chicago St. Ry. Co., 32 Fed. Rep. 270; People v. Kerr, 27 N. Y. 188; Moses v. Pittsburg R. R., 21 Ill. 516, 523; Stetson v. C. & E. I. R. R., 75 Ill. 74; Patterson v. C. D. & V. R. R., Id. 588; Peoria, etc., R. R. v. Schertz, 84 Ill. 135; C. & E. I. R. R. v. Loeb, 118 Ill. 203; C. & E. I. R. R. v. Ayers, 106 Ill. 511; Pittsburg & Ft. Wayne R. R. v. Reich, 101 Ill. 157, 176; C. & E. I. R. R. v. McAuley, 121 Ill. 161; Penn. M. L. I. Co. v. Heiss, 141 Ill. 35, 58, 59.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The first question for consideration upon this appeal is whether a court of equity will, in the case presented by appellant's bill, interfere at the suit of an owner of abutting property to restrain the use, for public purposes, of a street by a private corporation.

The question really is, whether an abutting owner has such a private right—vested interest—in the use to which a public street may be put, that he is entitled to have such private right and interest respected and protected by the people's writ of injunction.

It is manifest that if the abutting owner is entitled to enjoin the use of a public street, it is because of his private right; he can not assume to, because he does not represent

the public. The attorney general is the only proper representative of the public, and in suitable cases bills may be by him maintained to protect the public interests. Kerfoot v. The People, 51 Ill. App. 409; Attorney General v. The Newberry Library, 51 Ill. App. 166; same v. same, 150 Ill. 229; Hunt v. Chicago Horse & Dummy Ry. Co., 121 Ill. 638.

If one abutting property owner may, for such an injury to the public, file a bill and obtain an injunction, then each of such owners may do likewise.

Mr. A, the owner of a lot, obtains upon his bill an injunction against the contemplated use. His bill is answered; testimony is taken; upon hearing, the evidence, being considered, is found not to sustain the allegations of the bill, whereupon it is dismissed. Mr. B immediately files his bill, the allegations being the same as those in that of Mr. A, with the necessary variation as to the description of the lot of which B is the owner. If the bill of A presented a case for an injunction, the bill of B does; it is no answer to say that the court has found the allegations in the bill of A to be untrue; Mr. B was not a party to that suit; he is not bound by the conclusions there reached; he is entitled to be heard upon the charge by him made; he well urges that it by no means follows that he may not establish the truth of allegations which A failed to prove; and that the rights of B can not be foreclosed by a suit brought and prosecuted by A.

The court can not be a respecter of persons, and to be consistent must give B an injunction and hear his cause. The second suit results like the first, whereupon C files his bill demanding an injunction and a hearing. How can he be denied? In brief, if one abutting owner is entitled to, by injunction, maintain the public right, why is not each, successively?

If appellant may upon his bill obtain an injunction restraining the use of the street by appellee, why may not another abutting property owner, in another and proper proceeding, obtain an order compelling appellee to comply with its contract with the public, by placing rails upon and running cars for the carriage of passengers along the streets?

The difficulty with proceedings at the suit of individual owners of abutting property, to either restrain or compel the use of a public street for a particular purpose, is that such suit concludes no one but the parties to it. The very decree and restraining order appellant seeks, he might for a selfish and personal consideration release; he can establish only his property right, and that he may barter in any lawful way.

For these and other reasons it is well established that the attorney general is the proper party to represent the public, and a bill will not lie at the instance of an individual to restrain the doing of that from which the complainant will suffer no damage other than that which the public sustain.

The abutting property owners do not, in this as in some other States, own the fee of the street. The street is held by the public authorities in trust for the use of the public. The abutting owner has therefrom a right of access to his property, a right to the light and air that naturally come to his premises from the public way, but to the use of, or to control the use to which the street may be put, he has no more right than any of the other millions for whose convenience the highway exists. If, by reason of the taking of the street for a new public use, his property is specially damaged, he is entitled to recover such damage in an action at law. To one who desires at his home quiet and peace, it may be annoying that thousands should pass his door in noisy omnibuses or crowded cars. The right, however, to say who shall ride or walk past his door does not belong to him. The street is for the use of the public, of which he is but one.

Before the public authorities can give any one the right to lay railroad tracks past his property the consent of a majority of the owners of abutting property must be had, and with such consent, the right to put down such tracks can only be given for public purposes. The street is servient to the public, for its use, and neither by the authorities of the city or by the consent of the abutting owners, can the public be excluded therefrom.

In endeavoring to restrain the running of street cars for the accommodation of the public, appellant is asserting that he has a private right in the street superior to that of the public or that he is entitled to represent the public in his suit and conclude the millions by a decree rendered in litigation to which they are not parties.

In support of the position that in such a case as this a court of equity will, at the suit of an abutting property owner, restrain the running of cars upon the street, a large number of authorities have been cited, a few of which we have examined. Taking them in the order of citation the first to which our attention is called is that of Hickey v. The Chicago and Western Indiana Railway Co., 6 Ill. App. 172.

The opinion in this case was by the late Judge McAlister, and contains among other things, upon pages 186 and 187, the following:

" The bill in this case contains some eighty-two complainants. This multiplicity of plaintiffs, while it tends to obscure the merits and embarrass the remedy, was dictated doubtless by the fear of the suit being quietly disposed of by settlement with plaintiffs, if there were but few of them. As to thirty-five of these plaintiffs, the bill shows by its statements, their ownership, respectively, of real estate which the railroad company proposes under said ordinance to take and enter upon, or which is so located as to be specially injured by the construction of the railroad within the city under said ordinance. As to these, the bill shows a clear case for the interposition of equity by injunction, on the ground that the act threatened would be in excess of the power of the corporation; the entry upon plaintiff's lands would not be a mere trespass, but a continuing permanent injury to the owners of the land to be taken, and those whose premises were so situated as that they would receive special injury from the construction of the railroad, are equally entitled to the relief sought. As to the other plaintiffs, in respect to whose property they " would be more or less injured," we do not think the bill shows any case. There must be some special injury. Milhan v. Sharp, *supra;*

and this must be shown by facts stated." * * * "The bill was therefore well brought as to all plaintiffs whose land was about to be taken, or suffer special injury by the construction of the said railroad within the city. As to the other plaintiffs no case is stated within the jurisdiction of the court, though they asked relief against the same injury upon the same ground."

So far, then, from this case being an authority for the position assumed by appellant, it is directly the reverse; as to all the complainants in this bill occupying the position which appellant does here, the bill was dismissed.

The next case cited is that of Cobb v. I. & St. L. R. R. Co., 68 Ill. 233. The opinion begins with this statement :

" In December, 1871, plaintiff in error filed a bill in the St. Clair Circuit Court against defendant in error to restrain it from laying its railroad track over his land." To this bill defendant filed a demurrer, which the court below sustained and dismissed the bill. The opinion of the court on page 234 goes on :

" It is admitted, then, that complainant was in possession and had such title as authorized him to resort to the courts, for protection of his rights; that the company, without any pretense of right, were threatening to make a forcible entry upon his land to make a permanent structure, and to remove his sand and soil for sale, and by so doing it would endanger the destruction of the property itself, by turning the current of the river over his land, and only that they may convert his soil and sand into money. As admitted, this presents a case of a wanton, willful and most oppressive character. It is in utter disregard of right and in defiance of law, and devoid of every principle of fairness. When an answer shall be interposed, it is to be hoped that it may be shown that there was not such recklessness as is charged in the bill."

It is quite manifest that the relief furnished in such case does not warrant the granting of appellant's prayer.

The next Illinois case, to which our attention is called, is that of Snell v. Buresh, 123 Ill. 151, in which it was held

that a court of equity would restrain the successor of a cor-
poration, owning and operating a plank road for the use of
the public, with power to erect toll gates thereon, from
putting up a toll gate on such road, in such a way and at
such a place as to materially interfere with the use of two
public highways, the erection of such toll gate being in ex-
cess of the power of such plank road corporation; the court
holding that the act sought to be restrained would be but
the creation of a nuisance, and would be especially injurious
to the complainant's property and materially interfere with
their business.

The next Illinois case in the order of citation is that of
Field v. Barling, 149 Ill. 556. This was a suit to restrain
the construction of a bridge over an alley in the city of
Chicago. It appeared that the complainant and the de-
fendant claimed title from a common source, their grantor
having made a record and subdivision, in which said alley
appeared as appurtenant and servient to the respective lots
of the parties to the litigation. The opinion says on page
574:

" But from an examination of all the evidence we are sat-
isfied that the erection of the structure would result in
serious damage to appellees' property, different in character
from that sustained by the public."

That case is clearly not authority for what appellant asks
here. The parties do not claim title from a common source,
and appellant does not claim that his property will sustain
damage different in character from that sustained by the
public.

The next case is that of Zearing v. Raber, 74 Ill. 409.

The statement is that this was a bill in chancery to pre-
vent a threatened obstruction of the use of a street or way,
and that the facts appear in the opinion. The opinion sets
forth the laying out by the owners of a certain lot, of a
street across the same, and the preparing of a map showing
such street, which map was, however, neither acknowledged
nor recorded, and the conveyance by such owners of real
property with reference to such street. The opinion then

states that the question is whether a party who had conveyed premises referring to and describing such street can now be heard to deny the existence of a street, and concludes:

"The evidence shows a threatened nuisance, tending to deprive appellee and others of the full and free use of this street, as he is entitled to have it used, and this is a well recognized ground for equitable interposition."

In the present case appellant does not claim that in any way or wise he is about to be deprived of any use of the street.

Our attention is next called to the case of the Village of Princeville v. Auten et al., 77 Ill. 325.

This was a bill filed to restrain the village trustees from moving a town hall from the site it then occupied and placing it on a public square.

The court held that the evidence clearly shows that it was the intention of the proprietors of the town in dedicating this square that it should forever remain open for the convenience and common benefit of the inhabitants of the village; that the village authorities held the same in trust, to be devoted to the uses and purposes for which it was dedicated, and that an individual might restrain the public authorities from converting the property to a use different from that for which they held it in trust.

Appellant's bill does not contain any charge that the street held in trust for the use of the public is about to be diverted to other uses.

The next case is that of the Attorney-General v. The Chicago and Evanston Railway Co., 112 Ill. 520, that being a proceeding by the attorney-general, who, as we have before stated, is the proper officer to represent the public, can not be authority for the position that a private individual may, by his private suit, determine the manner in which the public shall pass over a common highway.

The next case cited is that of the City of Jacksonville v. The Jacksonville Railway Co., 67 Ill. 540.

The court in its opinion said:

"By virtue of its charter, the railway company claim the right to construct the track of its road across a public square, operate its road there, and thus frustrate the original purpose for which the ground was dedicated, and destroy its future benefit and enjoyment as a public park.

"This bill was filed to restrain the company from such an appropriation of this public ground."

The case is merely one to restrain the diversion of trust property to uses entirely foreign to those set forth in the deed creating the trust.

The next case is that of the Village of Brooklyn v. Smith, 104 Ill. 429.

The court, in its opinion, upon page 439, said:

"The case presented seems to be that of an intruder upon the public street of a village seeking an injunction against the village authorities to prevent their interference with his operations in cutting and removing ice from the street, that is, a trespasser, asking, against the legal owner, freedom from interruption in the despoilment of the latter's property. We perceive no right in the complainant which may lay claim to the interposition of a court of equity for its protection."

Comment upon such an opinion is in this case unnecessary.

The next case is that of Earll v. Chicago, 136 Ill. 277.

The opinion of the court, on page 288, contains the following:

"Where there is a special trust in favor of an adjoining property holder, or a special injury, a bill or suit may be maintained by an individual in respect to a public street or highway. City of Chicago v. Union Building Association, 102 Ill. 379; McDonald v. English, 85 Id. 232; Ottawa Gaslight Co. v. Thompson, 39 Id. 598."

The controversy in which this language is used is stated upon page 283 to be as follows:

"This controversy grows out of a bill filed by the appellant, against the city of Chicago and others, for the purpose of establishing her title to said piece of ground fronting

thirty-three feet on Oakley avenue and running back, of a uniform width, in a westerly direction, one hundred and ten feet. Such proceedings were had in the cause as that the appellee, Jackson, upon his own petition, was allowed to answer and make defense to the original bill, and was also permitted to prosecute a cross-bill or cross-petition, the prayers of which were, that the quit-claim deeds to the thirty-three feet of land should be set aside, appellant required to remove her fence, the land declared to be a part of Wilcox street, appellee declared to have a perpetual easement therein as a part of such street, and appellant perpetually enjoined from inclosing or obstructing, or claiming ownership in, said piece of ground."

The next case to which our attention is called is that of the Maywood Co. et al. v. Village of Maywood et al., 118 Ill. 61.

On page 65 is a statement of what the controversy was concerning :

"This is a bill brought in the Superior Court of Cook County, by appellees against appellants, for the purpose of having a certain square in said village, known as block 58 (except certain hotel grounds in the northwest corner thereof), declared to be a public park; and praying that appellant company surrender the control and management thereof to the trustees of said village, and that a trust deed, executed thereon by the company to Botsford, trustee, be set aside, and that appellants be enjoined from interfering with the use of said square as a public park by the said village and its residents and lot owners, and from selling or conveying the same, or taking any steps to foreclose the trust deed thereon, etc. The beneficiaries in the trust deed were made parties under the name of "unknown owners."

Upon page 72 the court said : "A court of equity has jurisdiction to entertain the bill filed in this case. As a foreclosure of the trust deed would probably result in the ownership of the "park" by private parties, there was a threatened perversion of the trust, upon which the property was held. Equity will interpose to prevent the perversion

of a trust. (City of Jacksonville v. Jacksonville Ry. Co., *supra.*) Again, the evidence shows a threatened nuisance, tending to deprive appellees and others of the full and free use of this park, as they were entitled to have it used. This is a well recognized ground for equitable interposition. Zearing v. Raber, *supra.*"

In the case at bar no intended perversion of the trust is charged, neither is it alleged that appellant is about to be deprived of the full and free use of the street in question.

Our attention is next called to the case of McKenzie v. Elliott, 134 Ill. 156. This case was a contest over a right to a private right of way. The case of Bez v. The Chicago R. I. & P. R. R. Co., 23 Ill. App. 137, is next called to our attention.

Upon page 140 the court said : " In cases like this, we think, although the fee of the street may be in the city, yet, the city having no power to grant the privilege, the appellant had a right to file this bill in equity to prevent the erection of a nuisance in the public highway, opposite her premises, and which closed out her ingress and egress in a great measure to and from the front of her property, as is stated in the bill, rendering her property practically worthless. Green v. Oakes, 17 Ill. 249; Craig v. People, 47 Ill. 487, 496; C. & W. I. R. R. Co. v. Dunbar, 100 Ill. 110."

In the bill of appellant filed in the case at bar, it is not alleged that ingress or egress to his property will be in any measure obstructed by the proposed railway.

Our attention is next called to the case of Carter v. The City of Chicago et al., 57 Ill. 283. The court in the opinion upon pages 286, 287 and 288, said : " The facts alleged in this bill, of themselves, without any specific allegation of fraudulent design, wantonness or oppression, show as clear a case of gross abuse of power and oppression as could all be described upon paper.

In cities the sidewalks are considered a part of the public streets, and as such, are to be kept, like the streets themselves, in a safe and convenient state of repair through their entire width.

The acts begun and threatened, and whose consummation this bill seeks to prevent, are both the destruction and permanent deprivation, by the board of public works and other city authorities, of a sidewalk upon the west side of Franklin street, while one of unusual width is given upon the east side; and this through mere wantonness, oppressive abuse of power, breach of trust, and a fraudulent scheme and design on the part of the city and board of public works to injure, annoy and oppress the plaintiff and other property-owners favored with these court yards. And what seems strange is, that at this age of equity jurisprudence, there should be doubt as to the jurisdiction of a court of equity to grant relief; yet that is the only question really involved in this case."

"The question for decision is not whether a court of equity will interfere with the exercise, within its proper limits, of a public political power vested in the city, which necessarily involves the greatest discretion, but whether, in the case of a plain departure from the power which the law has vested in it, and from fraudulent and malicious motives, it is, by the use of property which it holds in trust for the benefit of the public, about to do an irreparable injury to the property of individuals, a court of equity will intervene to prevent such injury."

The facts of this case are certainly very different from anything appearing in the present. The case of Green v. Oakes, 17 Ill. 249, to which our attention is next called, was a bill in chancery to enjoin the obstruction of a public road, it appearing that the appellee had avowed his purpose to obstruct the same by fences and gates at two different points. No threatened obstruction to the public street is charged by the appellant.

The case of Stetson v. C. & E. I. R. R. Co., 75 Ill. 74, was a bill to restrain a railroad company from constructing and operating its road in a street until damages to adjacent lots should be ascertained and paid. The court, on page 75, said:

"It may be regarded as the settled rule of this State, that

an owner of an abutting lot can not prevent the use of a street for a railway when such use is permitted by the city and is authorized by an act of the legislature."

And upon page 60, the opinion goes on : " Holding, as we do, there is no ground for the interference of a court of equity,   *   *   *   the injunction was properly denied, and the decree dismissing the bill will be affirmed."

The case of Craig v. The People of the State of Illinois ex rel. Neville, 47 Ill. 487, to which our attention is next called, was one in which a bill was filed by the state's attorney against appellants, to enjoin them from closing a certain road and certain bridges so as to interfere with the free use of the same by the people. The attorney general, as before stated, is the proper person to represent the public in cases of this kind.

The case of C. & W. I. R. R. v. Dunbar, 100 Ill. 110, was a bill in equity to restrain a railroad from further proceeding in the construction of its road, and in certain condemnation proceedings which they had instituted against the complainant.

The Superior Court of Cook County heard the case upon the bill and answer, and entered a decree *pro forma* that the ordinance under which said railroad was operating was illegal and void upon its face; that said ordinance is also illegal and void because no petition of property owners was filed prior to its passage; that the passage of a valid ordinance locating the precise route of the railroad and consenting to the crossing of the streets and alleys upon such route is a condition precedent to the exercise by the railroad company of the power of eminent domain to acquire property within the city.

The opinion of the court on page 125 opens with this sentence : " The decree in this case is clearly erroneous."

The case of the Wiggins Ferry Co. v. E. St. L. U. Ry. Co., 107 Ill. 450, to which our attention is next called, was, as appears in a statement of the opinion of the court, concerning the following matter :

" This suit is brought upon the legal hypothesis that the

permission of the municipal authorities alone did not authorize the company to construct and operate its road in one of the public streets of the city, in the manner and for the purposes proposed, alone, but that in addition to this the company was bound to obtain the assent of the requisite number of the abutting property owners, which it is conceded was not done in this case. The trial court held, as a matter of law, that under the circumstances of this case it was not necessary to obtain the assent of the abutting lot owners, or any portion of them, to warrant the company in constructing and operating its road in the manner proposed; that for such purpose the grant of the right of way by the city was all that was required; and this ruling of the trial court presents the main question for determination on this appeal." The decree of the Circuit Court was affirmed.

Numerous cases in other States in support of the contention of appellant that in such a case as this a property owner who sustains no damage not common to the public may restrain the public use of a common highway for purposes not inconsistent with the trust for which it is held, have been cited. We have not seen fit to examine all of these. We are aware that outside the State of Illinois authorities may be found sustaining the position of appellant; but life is too short and the time of this court with other matters too much occupied to permit us at this time to do more than to examine, as we have, the long list of Illinois authorities cited by appellant, none of which sustain his contention.

While an abutting property owner can not assume to represent the public, and by his individual suit conclude its rights, (Davis v. Mayer, 2 Duer 663; Winterbottom v. Lord Derby, 2 Law R. Exch. 316; Hartshorn v. South Reading, 3 Allen 501; McDonald v. English, 85 Ill. 232; High on Injunctions, Sec. 762; Pomeroy's Eq. Juris., Sec. 1379; City of East St. Louis v. O'Flinn, 119 Ill. 200; City of Chicago v. Union Bldg. Assn., 102 Ill. 379; Patterson v. C. D. & V. Ry. Co., 75 Ill. 588; Vanderpool et al. v. The West & South Towns Ry. Co., Chicago Legal News, March 24, 1894,) for

damage special and peculiar to himself, he has, under the constitution and laws of this State, a remedy at law. The fact that by permission to use the street for a particular purpose an abutting property owner will be specially damaged, affords no ground for restraining such use so long as the property holder is able to recover and collect all the damage he suffers. Vanderpool v. The West & South Towns Ry. Co., *supra;* Loire v. North Chicago St. Ry. Co., 32 Fed. Rep. 270; People v. Kerr, 27 N. Y. 188; Moses v. Pittsburg R. R., 21 Ill. 516, 523; Stetson v. C. & E. I. R. R., 75 Ill. 74; Patterson v. C. D. & V. R. R., Id. 588; Peoria, etc., R. R. v. Schertz, 84 Ill. 135; C. & E. I. R. R. v. Loeb, 118 Ill. 203; C. & E. I. R. R. v. Ayers, 106 Ill. 511; Pittsburg & Ft. Wayne R. R. v. Reich, 101 Ill. 511; C. & E. I. R. R. v. McAuley, 121 Ill. 161; Penn M. L. I. Co. v. Heiss, 141 Ill. 35, 58, 59; Tibbets v. The West and South Towns St. Ry. Co., 54 Ill. App. 180; Same v. Same, 38 N. E. Rep. 664; North Chicago St. Ry. Co. v. Cheetham, Ill. App. Opinion filed April 4, 1895.

The decree of the Circuit Court sustaining the demurrer to and dismissing the bill is affirmed.