CHICAGO & NORTHWESTERN RAILWAY CO.

v.

VILLAGE OF JEFFERSON ET AL.

1. RAILROAD EASEMENT IN HIGHWAY—COMPENSATION FOR DAMAGE.— Where a railroad company acquires in perpetuity an easement in so much of a street as is occupied by the railroad, this easement is a property right, and it is as much protected from unlawful invasion as any other property, and can not be taken or damaged for public use without just compensation.

2. WHAT IS ORDINARY AND PROPER USE OF HIGHWAY.—Where a rail-

road company acquiring its easement in the highway took it subject to such rights as the public had already acquired therein, that is, subject to the right of the public to subject the street to all the ordinary and proper uses of a highway. *Held*, that the occupation of a considerable portion of the street for the construction of a ditch, not for the improvement of the street, but for the purpose of draining adjacent lands, is a new use of the street, for which compensation must be made in case property is damaged thereby. As no provision has been made by the city in this case to pay the damage, the railroad company is entitled to have the construction of the ditch enjoined until some provision for its payment is made.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding. Opinion filed April 15, 1884.

This was a bill in chancery for an injunction, brought by the Chicago and Northwestern Railway Company against the Village of Jefferson, Cook county, Ill., a corporation organized under chapter 24 of the Revised Statutes, and Asa F. Bradley, the village engineer, to restrain the defendants from constructing a certain ditch or drain under and across the complainant's railway track in said village. A preliminary injunction having been granted, the defendants answered the bill, and afterward moved to dissolve the injunction, and said motion coming on to be heard upon bill, answer, and certain affidavits filed by the respective parties, was granted, and said bill was thereupon dismissed for want of equity, at the costs of the complainant. From this decree the complainant has appealed to this court.

The bill avers, in substance, that the Chicago and Wisconsin Railroad Company was organized under a special act of the General Assembly of the State of Illinois, approved January 12, 1851, and that by virtue of said act said company was authorized, among other things, to construct its railroad upon or across any road or highway, which the route of its railroad should intersect, but was required to restore the road or highway thus intersected to its former state, or in a sufficient manner not to have impaired its usefulness; that said company constructed a railroad from Chicago through the territory now embraced within the village of Jefferson, to Cary,

a distance of thirty-eight and one half miles; that said com
pany was afterward consolidated with a certain other railroad
company in the State of Wisconsin, and that by the consoli-
dation of the company thus formed with certain other railroad
companies the complainant became organized; that by an act
of the General Assembly of the State of Illinois, approved
February 15, 1865, it was provided that the complainant, as
then consolidated, might have and exercise all powers thereto-
fore conferred by the laws of this or any other State upon any com-
pany consolidated with it; that by virtue of such consolidation
said railroad running through the village of Jefferson became
a part of the complainant's road; that when said railroad was
constructed and for more than twenty years thereafter, all the
natural drainage from the west toward the railroad was from
a ridge, the top of which is about two hundred feet from the
road, and that no surface water flowed toward said road from
any lands west of said ridge; that the complainant had con-
structed under its railroad two stone culverts, of dimensions
sufficient to drain all the water from the adjacent property
which would naturally drain or flow toward said railroad in
any season; that on the west side of said ridge for a distance
of nearly two miles, there is low ground, the water from which
could never naturally flow or drain to said railroad; that the
president and trustees of said village have constructed a large
ditch from said low grounds west of said ridge along a public
street of the village to where said street intersects said rail-
road, for the purpose of draining said lands; paying the ex-
pense of the same out of funds raised by taxation; that said
ditch is between two and three miles long, with branches so
constructed as to drain a territory of about five square miles;
that it was not needed or claimed to be needed for the pur-
pose of draining any waters which, before its construction,
would naturally drain toward said railroad from adjacent
lands; that said ditch is five feet wide at the bottom and
twelve feet deep, with a one foot to one foot slope; that the
complainant had constructed said railroad and put in said
culverts long before the passage of said chapter 24 of the
Revised Statutes, and long before the incorporation of said

village, and that said railroad has been in operation ever since its construction; that said ditch was designed and constructed solely for the purpose of draining the lands west of said railroad and west of said ridge.

The bill further avers that said president and board of trustees have determined to construct said ditch under said railroad; that the cost of putting a safe and suitable culvert under said railroad, so as to pass the water which would flow along the ditch, would be from $1,000 to $1,500; that said village has passed an ordinance providing for the construction of said ditch across the line of said railroad, and directing the village engineer, after giving the complainant certain notice, to construct said ditch across and under said railroad; that the complainant runs over said railroad at that point an average of from thirty to thirty-five freight trains daily, and also twenty-eight regular passenger trains; that the digging of the ditch through the railroad embankment, would for the time being and during the construction of the culvert be a total obstruction of the business of the complainant over said road; that it is not the design of said village to do anything more than dig the ditch, without putting in any culvert; that said village has made no assessment of the damages which would result to the complainant from the construction of said ditch in the manner proposed, nor furnished any means to compensate the complainant for such damages, and that said ditch would result in no benefit to the complainant, but is only designed for the purpose of draining lands at a distance from said road, and in which the complainant has no interest; that the complainant is ready and willing and has repeatedly offered to construct said ditch under its road in the manner provided by said ordinance, and put in a suitable culvert, provided the same should be paid for out of the general funds of the village, in the same manner as the residue of the ditch has been paid for.

The bill charges that said village has no legal right to construct said ditch under the complainant's railroad for the purpose of draining lands from which the water would not naturally flow in that direction, and has no right to construct

such ditch and culvert under said railroad at the sole expense of the complainant; that the village engineer has notified the complainant that he is intending to and will immediately take possession of said railroad tracks and extend said ditch under the same unless enjoined from so doing; that great and irreparable loss would result to the complainant, as well as great danger and peril to passengers on its road, if said engineer is permitted to proceed with said work. The bill prays that the defendants be enjoined from constructing said ditch in the manner above stated.

The answer admits that when said railroad was constructed and for more than twenty years thereafter, all the natural drainage to said railroad was from said ridge, about two hundred feet west of the railroad, and that there was no natural drainage to the railroad from the lands west of the ridge, said lands being low and swampy and having no drainage until said ditch was opened; that the complainant had constructed under its railroad a stone culvert of dimensions sufficient to drain all water from the adjacent lands which naturally drained or flowed in that direction; that said village has constructed a large ditch from said low lands, for the purpose of draining the same along Diversey street, a public street or highway of the village, to where said street intersects the railroad, and that said ditch was paid for out of the general funds of the village raised by taxation; that said Diversey street was a public street or highway long before said railroad was constructed or laid through the village; that said ditch has been opened along said Diversey street down to the point where it strikes the westerly line of the railroad, and also from the easterly line of the railroad along said street to the river; that said ditch is a part of the general system of drainage established by the village; that said ditch along Diversey street is two or three miles in length, with branches, and that it drains a large extent of territory, though not to the extent of five miles square; that said ditch is five feet wide at the bottom, but only nine feet deep measuring from the railroad track, and that it has a slope of one foot in one; that the railroad and culvert were built long before the pas-

sage of chapter 24 of the Revised Statutes, and long before the incorporation of said village, and that the railroad has been in operation ever since its construction; that at the time the said railroad and culvert were built, the territory now embraced in said village was under township organization, and that the village is the successor of said town; that the village has determined to construct said ditch under said railroad; that said ditch can only be constructed by cutting through the embankment upon which the railroad tracks rest, and that such construction will be an obstruction to the complainant's business; that it is not the design of the village to do anything more than dig the ditch under the complainant's road, and that the village has made no assessment of the complainant's damages, or provided any means to compensate the complainant therefor.

Mr. B. C. COOK, for appellant; as to the railroad company's property in the easement and the right of compensation, cited Ogle v. P. W. & B. R. R. Co., 3 Houston (Del.), 267; Vassalburgh v. Somerset, etc., R. R. Co., 43 Me. 337; Learney v. Smith, 86 Ill. 391; I. B. & W. R. R. Co. v. Hartly, 67 Ill. 439; City of Shawneetown v. Mason, 82 Ill. 337; Nevins v. Peoria, 41 Ill. 502; I. C. R. R. Co. v. City of Bloomington, 76 Ill. 450.

A city which has by law the power to regulate the grade of streets, can not change the grade in such manner as to injure private property without making compensation: City of Elgin v. Eaton, 83 Ill. 535; City of Pekin v. Brereton, 67 Ill. 477; City of Dixon v. Baker, 65 Ill. 519; City of Aurora v. Reed, 57 Ill. 30.

Mr. FRANCIS DE PFUHL and Messrs. MONK & ELLIOTT, for appellees; that it is a lawful use of a public street to construct a sewer or drain on or under the same, cited West v. Barcroft, 32 Vt. 367; Cone v. Hartford, 28 Conn. 363; Kelsey v. King, 32 Barb. 410; Stouding v. City of Newark, 28 N. J. 187.

Appellant's rights in the highway are subordinate to those

of the public:   The People v. R. R. Co., 67 Ill. 188; Queen
v. Inhabitants of Ely, 69 E. C. L. 843; Manly v. St. Helen's
Canal and R. R. Co., 2 H. & N. 840.

Such grants being without consideration and in derogation
of common rights, are to be construed most strongly against
the grantee: Cayuga Bridge Co. v. Magee, 2 Paige Ch. 119;
Mohawk Bridge Co. v. Utica, etc., Bridge Co., 6 Paige Ch.
554; Barrett v. Stockton R. R. Co., 40 E. C. L. 208; Gildart
v. Gladstone, 11 East, 675.

BAILEY, J.   At the time of the construction of that part
of the complainant's railroad in question in this suit, Diversey
street was one of the highways of the town of Jefferson, then
under township organization, and so remained up to the
time of the incorporation of the village of Jefferson, embrac-
ing the same territory, under chapter 24 of the Revised
Statutes.   The charter of the Chicago and Wisconsin Rail-
road Company, the corporation by which the railroad was
built, authorized that company to construct its railroad upon
or across any road or highway which the route of said rail-
road should intersect, but required it to restore the road or
highway intersected to its former state, or in a sufficient
manner not to have impaired its usefulness.   Under this
legislative authority, said railroad was constructed across
Diversey street, and it is not claimed that the highway was
not at that time restored to its former state as required by
the charter.   The Chicago and Wisconsin Railroad Com-
pany, and after the consolidation, its successor, the com-
plainant, thereby acquired in perpetuity an easement in so
much of the street as was occupied by the railroad.   This
easement is a property right, and it is as much protected
from unlawful invasion as any other property; nor can it be
taken or damaged for public use without just compensation.

The vital question in the case is whether the construction
of said ditch, in the manner contemplated by the defendants,
will constitute a taking or damaging of the complainant's
property, within the meaning of the constitution.   The rail-
road company, in acquiring its easement in the highway,

took it subject to such rights as the public had already acquired therein, that is, subject to the right of the public to subject Diversey street to all the ordinary and proper uses of a highway. Is the construction of said ditch such a use?

As is alleged in the bill and admitted by the answer, the ditch is being dug for the purpose of draining a large tract of low and marshy land, and is only a part of a general drainage system which the village authorities have adopted and are seeking to carry out. It is not pretended that it is in any way necessary to the improvement of the highway, or to its 'ordinary or appropriate uses, nor that it is being constructed for such purpose. Even if the village has the authority under the statute to adopt and carry out a general drainage system, and to occupy a portion of a public highway for its drain—a question which it is not now necessary for us to determine—it seems clear that such occupancy of the highway is outside of and foreign to the proper uses of the highway as such, and subjects all property thereby taken or damaged to a new and additional burden.

A very similar question arose in City of Shawneetown v. Mason, 82 Ill. 337. There the city raised the grade of a certain street, not with the view of improving the street, but to construct out of it a levee for the protection of the city against inundation from the Ohio river. The embankment was still used as a street, but in a suit by an adjoining property owner to recover damages resulting to his property from such change of grade, it was held that, while the city had a right to elevate the grade of its streets, as it might think proper, the erection of the embankment was not a mere elevation of the grade, but an appropriation of the street to a new use, legitimate enough in itself, but still a use not implied from the laying out of the street; and therefore if the plaintiff's property had been damaged by the erection of the embankment, he was entitled, under the constitution, to just compensation.

We see no essential difference in principle between the case above cited and the present case. If the elevation of the grade of a street, so as to construct out of it a levee, consti-

tuted a new use not implied from the laying out of the street, it seems very clear that the occupation of a considerable portion of a street for the construction of a ditch, not for the improvement of the street, but for the purpose of draining adjacent lands, is a new use of the street, for which compensation must be made in case property is damaged thereby.

That the property of the complainant will be damaged by the construction of the proposed ditch, is beyond question. The ditch is to be five feet wide at the bottom and at least nine feet deep and twenty-three feet wide at the top. This ditch the defendants, as they admit, propose to excavate under and across the railroad, and leave open without constructing any culvert or otherwise restoring the road-bed and track. It is alleged in the bill—and the allegation is in no way disproved —that such restoration of the railroad will involve an expenditure of from $1,000 to $1,500. To this extent at least, the property of the complainant will be damaged. To pay this damage no provision has been made, and until some provision for its payment is made, the complainant is entitled, upon the case made by the bill and admitted by the answer, to have the construction of the ditch across the railroad enjoined. The court erred in dissolving the injunction and dismissing the bill, and the decree will therefore be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Decree reversed.