## Chicago & W. I. R. R. Co. v. The General Electric Ry. Co.

1.  EQUITY JURISDICTION — *Threatened Damages to Property.* — Whether a court will entertain jurisdiction in cases of threatened injury to property depends largely on the peculiar facts in each case.   Generally speaking, if threatened damages are consequential only, there is ordinarily no jurisdiction in equity; but if the threatened damages be direct a court of equity will, in a proper case, entertain jurisdiction at the instance of the owner of the property.

2.  SAME—*Where the Right is to Demand Compensation.*—It is where the right of a party is "to demand compensation," as distinguished from "a legal right to recover damages," that a court of equity will entertain jurisdiction.   The right to demand compensation exists when the injury is direct, and the right to recover damages exists when it is consequential.

3.  SAME—*When it May be Invoked.*—Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy when the injury is destructive or of a continuous character or irreparable in its nature; and the appropriation of private property to public use, under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded *ex debito justitiæ.*

4.  SAME—*Where the Damages are Consequential.*—The reason why equity will not entertain jurisdiction where threatened damages are only consequential is that there is a full and complete remedy at law.

5.  SAME—*Where the Threatened Damages are Direct.*—The reason why equity entertains jurisdiction when the threatened damages are direct is that one party will not be permitted to deprive another of his property without due process of law.

6. SAME—*Where a Private Party is to Suffer a Special Injury.*—In some cases where a private party is to suffer a special injury by reason of the construction of a railroad different and distinct from that to be suffered by any other person, or by the general public, a court of equity will entertain jurisdiction at the instance of such party, even though it will also entertain jurisdiction at the instance of the attorney-general or other representative of the general public.

7. STREETS—*Street Railways in, Not an Unlawful Use.*—Permitting street railroads to be placed in public streets is not in itself subjecting such streets to an unlawful use.

8. SAME—*Electrical and Elevated Railways Not a New Servitude.*—A street railway operated by electricity, or an elevated street railroad, is "not a new servitude of a public street."

9. SAME—*The Right to Occupy by Railroads.*—The right to occupy a public street with a railroad track is a question between the railroad company and the municipality controlling the street, or the public generally. An abutting owner can invoke equity jurisdiction only in order to protect his property from direct injury by the use of the street for railroad purposes. When such use is only indirect or consequential it may be recovered for in an action at law; a court of equity will not interfere by injunction.

10. INJUNCTIONS—*At the Suit of Abutting Owners.*—The use of a street by street railroads, electric or elevated roads, is not a new or additional servitude and will not be restrained at the suit of an abutting property owner where there is no physical taking.

**Bill for Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded with directions. Mr. Justice SHEPARD dissenting. Opinion filed January 9, 1899.

EDGAR A. BANCROFT and HAMLINE, SCOTT & LORD, attorneys for appellant.

FERDINAND GOSS, EDWIN WALKER and THOMAS A. MORAN, attorneys for appellee.

MR. JUSTICE HORTON delivered the opinion of the court.

The appellant is a corporation owning and operating a steam railway, a portion of which is in the city of Chicago, in part upon private property and in part upon streets and at street crossings in said city. The appellee is a corporation organized under the laws of this State for the purpose of constructing and operating a street railway in said city.

Appellee was about to lay street railway tracks upon and across the tracks of appellant in Custom House Place, Fourteenth street and Dearborn street. Appellant filed its bill in chancery in the Superior Court, the purpose of which was to restrain the laying of such tracks by the appellee.

It is stated in said bill that Custom House Place and Plymouth Place, along which appellee was about to lay its tracks, are a portion of the distance but forty feet wide, and a portion but fifty feet wide, and that Fourteenth street is but forty feet wide; that appellant owns a large amount of property abutting said streets, and that in the purchase and improvement of such property it has expended several millions of dollars for the purpose of establishing terminal facilities for a great railway system. It is also charged in said bill that appellant was legally authorized so to do, and that it has laid and now owns a large number of tracks upon and across streets in said city; that appellant is under contract obligations with the city of Chicago to pave and keep in repair portions of said streets wherein its tracks are laid, and that appellee intends and threatens and is about to enter upon said streets, and "to tear up and remove from said streets the tracks, ties, paving, rails, bonds and property" of appellant. And it is also charged in said bill that the laying of tracks and operating of a street railway by appellee in the manner and upon the streets as set out in said bill, would not only take from appellant property and vested property rights and interests, but would prevent ingress and egress to and from, and thus greatly injure and practically destroy and render almost valueless a large part of the property and improvements of appellant for the uses and purposes for which such improvements were made.

The bill also charges, which is admitted by the demurrer, that the ordinance under which appellee claims the right to go upon said streets and tear up and remove the tracks and ties, and destroy the property and vested rights of appellant, was obtained by the procurement and fraud of appellee, stating in detail the alleged acts of fraud. The bill also

states that the ordinance is absolutely void, although that is but legal conclusion.

A preliminary injunction was issued out of the Superior Court, whereby the appellee was restrained, among other things, from laying down, locating, constructing or erecting any railroad track or tracks or poles, etc., within so much of Custom House Place, Fourteenth street and Dearborn street as are occupied by the tracks and roadbed of appellant, and from crossing appellant's said tracks and roadbed within said streets, and from disturbing, molesting, removing or interfering with the railroad tracks, ties and railway lands of appellant, or the paving within the right of way of appellant along said streets or either of them.

To said bill appellee filed a demurrer, and moved to dissolve said injunction. The motion to dissolve and the demurrer were sustained, and the bill dismissed for want of equity; and the cause brought to this court by appeal. An order was entered in this court directing that such appeal should have the effect to continue in force said injunction until the further order of this court, or until the final hearing and determination of said appeal. Upon the stipulation of the parties, filed herein, this cause is now " taken for final determination."

Under the decisions of the Supreme Court of this State, the appellant has no standing in a court of equity merely because it owns a large amount of property abutting on said streets. This is conceded by solicitors for appellant, and we need cite no authorities upon this point.

It is not deemed necessary to attempt to review at length the great number of authorities cited in the elaborate and exhaustive oral and printed briefs and arguments of counsel. The first question to be determined is: Has a court of equity jurisdiction to hear and determine, at the instance of appellant, the questions involved in this case?

We have examined a large number of the cases cited, as well as other cases. Whether a court of equity should entertain jurisdiction depends largely upon the peculiar

facts in each case.   Speaking generally, we are of opinion that, in this State at least, it is the settled law that, if threatened damages are consequential only, there is ordinarily no jurisdiction in equity; but if the threatened damages be direct, a court of equity will, in a proper case, entertain jurisdiction at the instance of the owner of the property which is to be taken or directly injured.   The cases where it has been done are so numerous that it will not be contended that courts of equity will not, under any circumstances or in any case, entertain jurisdiction at the instance of either a steam or street railway company, to protect the rights, interests and property of such railway company in public streets, as against a wrong-doer.   The question as to jurisdiction to be considered, when a case of the character indicated comes before a court of equity, is whether the facts in that particular case and the remedy sought are such that a court of equity should, under the rules and principles controlling its jurisdiction, hear and determine the same.

The case of Osborne v. M. P. Ry. Co., 147 U. S. 248, was a bill filed in the United States Circuit Court by an abutting property owner to restrain the laying of a steam railway track in Gratiot street, in the city of St. Louis, in front of complainant's property.   The bill was dismissed by the Circuit Court, without prejudice to complainant's right to sue at law for the damages claimed, and this decree was affirmed by the Supreme Court of the United States.   In the opinion, Mr. Chief Justice Fuller, speaking for that court, said (p. 259):

" Where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law in fact inadequate, before restraint will be laid upon the progress of a public work.   And if the case made discloses only a legal right to recover damages rather than to demand compensation, the court will decline to interfere."

This language is quoted with approval in the Doane case, *post*, at p. 519.

It is clearly implied by this language that where the right of a party is "to demand compensation," as distinguished from "a legal right to recover damages," that a court of equity will entertain jurisdiction.

The right "to demand compensation" exists when the injury is direct, and only "a legal right to recover damages" exists when the injury is consequential. Mr. Chief Justice Fuller, in the same case, says:

"Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy when the injury is destructive or of a continuous character or irreparable in its nature; and the appropriation of private property to public use, under color of law, but, in fact, without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded *ex debito justitiæ.*"

The reason why equity will not entertain jurisdiction where threatened damages are only consequential, is that there is a full and complete remedy at law. Doane v. Lake St. El. R. R. Co., 165 Ill. 510, and numerous Illinois cases there cited.

The reason why equity does entertain jurisdiction when the threatened damages are direct, is that one party will not be permitted to deprive another of his property without due process of law.

If a private party is to suffer a special injury by reason of the construction of a railroad, different and distinct from that to be suffered by any other person, or by the general public, then, in some cases, a court of equity will entertain jurisdiction at the instance of such private party, even though it would also entertain jurisdiction at the instance of a representative of the general public. D. & S. Ry. Co. v. Den. City Ry. Co., 2 Colo. 673; Canastata Knife Co. v. Newington Tramway Co., 36 Atl. Rep. (Conn.) 1107, 1112.

The Doane case is cited by counsel upon both sides of the case at bar. We do not understand that case as being decisive of this. It seems to us that the opinion of the Supreme Court is explicit, clear and unambiguous. The complainant

in the Doane case was owner of property abutting the street where it was proposed to erect an elevated street railroad. He had no property or property rights or interests which were to be taken or encroached upon. His claim was based entirely upon his rights as an owner of abutting property. Whatever damages he might suffer were only resulting or consequential damages. These facts must be kept clearly in mind in considering the language of the court in that case.

It is there held first that "It is the settled law of this State that permitting street railroads to be placed in streets is not subjecting them to an unlawful use." The next point in the opinion is, that a street railway operated by electricity, or an elevated street railroad, is "not a new servitude of the street." In regard to the latter it is said that "in view of the known fact that such elevated lines in large cities greatly accommodate the public by increasing the facility and safety of transit, it can scarcely be seriously contended that permitting them to be constructed and operated is to subject the streets to a new servitude or unlawful use." In such a case, as is there held, "an injunction will not be granted to restrain the construction or operation of the road at the suit of an abutting property owner." And quoting from C., B. & Q. R. R. Co. v. W. C. St. R. R. Co., 156 Ill. 273, it is said that "In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking, the remedy being an action at law for damages."

It is there stated that the real ground upon which relief by injunction is denied to an owner of abutting property is that a street railway (either surface or elevated) is a proper use of a street, and the right to thus occupy a street is properly a question between the defendant and the municipality having the control of the street, or between the defendant and the public generally. An abutting property owner "can only invoke that (equity) jurisdiction in order to protect his property from threatened injury;" that is, where there will be a direct or physical injury. But the injury to the com-

plainant in that (the Doane) case, as an abutting property owner, is indirect and consequential; that is, " his injury is a depreciation of the property, which is capable of being estimated in money and recoverable in an action at law; therefore a court of equity will not interfere by injunction" (p. 519).

Briefly stated, so far as necessary in considering the case at bar, the Doane case holds that street railroads are not an unlawful use of the streets; that an electric or elevated street railroad is not a new or additional servitude; that such a use will not be restrained at the suit of an abutting property owner; that, as there is no physical taking, injunction will not lie; that the right to occupy a street is a question between the railroad company and the municipality controlling the streets, or the public generally; that an owner can invoke equity jurisdiction only in order to protect his property from direct injury; and that injury to abutting property, by the use of a street for street railroad purposes, is only indirect or consequential, and may be recovered in an action at law, and therefore a court of equity will not interfere by injunction.

It is not, in that case, held or intimated that when a street railroad company is about to physically take or encroach upon or destroy the property of another, that equity has no jurisdiction to interfere. In the case at bar, under the allegations of fact contained in the bill and admitted by the demurrer, appellee is about to physically enter upon and injure property of appellant which is " fixed and immovable in its character, like realty, and *recognized and protected by the law as fully as a fee simple in land.*" Such a course can not be justified or sustained by anything said in the Doane case.

The appellant, so far as shown or claimed in the case at bar, had the lawful right to lay its tracks in the manner and at the places they were laid in said streets. It had laid said tracks and was owner thereof. The terms upon which it might lay such tracks offered to appellant by the city were accepted by it. That constituted a contract by

which the applicant acquired the right to occupy a portion of said streets by its ties, rails, cars and engines, so far as it might be necessary for operating its railway. It had thus acquired a franchise appurtenant to said streets.

Counsel for appellee, in one of their printed arguments, state that " If complainant, as counsel contends, has a property right in the street which will be injured by the running of the street railway over its tracks, then it can enjoin the street railway, even though it has lawful authority, because it is not in the power of the city to authorize the physical invasion of complainant's property without just compensation. In other words, if complainant has a property right in the street, it stands like the owner of the fee; its property rights can not be destroyed merely by an ordinance of the city."

It seems to us that the allegations of the bill show a " physical invasion of complainant's (appellant's) property."

The case of Chicago v. Baer, 41 Ill. 306, was one in which the validity of a special assessment was involved. The assessment was for the paving of a portion of North Clark street. In that portion of the street there was a street railroad. No part of the assessment in question was levied upon the railroad company, because it was not considered by the city authorities liable for any portion of the expense. The entire expense of the improvement was levied upon the abutting real estate. It was held that the assessment was illegal, because no portion of the expense was levied against the railroad company. In considering the question, the Supreme Court says (p. 312):

" Now, it is true, as urged by counsel, that the railway company has not become the owner of any portion of these streets in fee; but it has certainly, through its charter from the legislature, and its contract with the city, acquired a property in them of the most valuable character, which neither the legislature nor the city can take away without the consent of the company, and capable, like other property, of being sold and conveyed. The city council has made a contract with the company, by which it has granted to the latter what is substantially a leasehold interest in a

portion of this street for a term, by the original ordinance, of twenty-five years. * * * By this contract (p. 313) the railway company acquires the right to occupy a certain portion of the street by its ties, rails and cars, so far as may be necessary for operating the railway. It has acquired rights in the street which neither any other person or company nor the general public possesses. * * * This franchise and this right of property together constitute a property fixed and immovable in its character, like realty, and recognized and protected by the law as fully as a fee simple in land."

The Baer case is cited in C. C. Ry. Co. v. Chicago, 90 Ill. 573, and is there approved, substantially the same language from that case as above quoted, being there quoted with approval.

The Baer case was decided prior to the adoption of the present Constitution, and at a time when the statutes as to special assessments were different from those now in force. By the city charter · then in force, the expenses of any improvement were to be defrayed by special assessment upon " real estate benefited." It is under that statute then in force that it is held that a special assessment can not be sustained because the property of the railway company in the street is omitted from the assessment. As the statute required that the assessment should be upon real estate, it must have been that, in the opinion of the Supreme Court, that railway company's property in the street was real estate, and that it must be " recognized and protected by the law as fully as a fee simple in land." In the case of Rich v. Chicago, 152 Ill. 18, 34, the Baer case and the statute in force at the time it was decided are carefully reviewed and the Baer case held to be " controlling " at the time the Rich case was decided, in 1894.

The Baer case has been quite a number of times referred to by the Supreme Court and, so far as we are advised, in every instance with approval. So also as to the Rich case.

In C. & N. W. Ry. Co. v. Village of Jefferson, 14 Ill. App. 615, 621, Mr. Justice Bailey, speaking for this court, referring to the right guaranteed to the railway company to construct its railroad across Diversey street, said that

the railroad company "thereby acquired in perpetuity an easement in so much of the street as was occupied by the railroad. This easement is a property right, and it is as much protected from unlawful invasion as any other property."

That case is referred to and approved, and the language quoted above is again used in C. & W. I. R. R. Co. (appellant here) v. C. & St. L. & P. R. R. Co., 15 Ill. App. 587, 592.

In L. S. & M. S. Ry. Co. v. C. & W. I. R. R. Co., 100 Ill. 21, 31, Mr. Justice Sheldon, speaking for the Supreme Court, and speaking of the rights of this appellant in property in the immediate locality of said Fourteenth street and Dearborn street tracks, said:

"The defendant companies were the owners of this right of way, and although the right is limited to the use of the land for the construction, maintenance and operation of a railroad upon it, this limited use is property, and as much so as if the use were an absolute one."

Permission duly granted, by municipal officers having power to grant the same, to a railroad corporation to lay its tracks in the streets of a city, "is a franchise vested in the donee, and when availed of becomes a property as secure from all improper invasion as property of any other character, or acquired in any other manner."

The case of Chicago Gen. Ry. Co. v. W. Ch. St. R. R. Co., 63 Ill. App. 464, is one in which one street railway company sought by bill in chancery, to prevent another street railway company from interfering with its use of the street and its tracks in the street. It is there held that a court of equity will entertain jurisdiction for the purpose of protecting the complaining company from such interference. Mr. Justice Gary there says (p. 474) that "Property of a street railway is entitled to protection against wrong doing to the same extent as other property. Central City Ry. v. Ft. Clark Ry., 81 Ill. 523." As stated by Mr. Justice Waterman in that case, street railway companies have not "merely for their own accommodation, profit or pleasure,

any right to lay tracks in the public streets. The privilege in this regard given to them is for the accommodation and benefit of the public, and their undertaking to serve it."

In the case at bar, the appellant is as much a servant of the public as is the appellee. The bill states that by actual count, for twenty odd consecutive days, the average number of trains passing over its tracks per day at said Fourteenth street crossing, was 1,043, and at said Dearborn street crossing was 235.

It is further admitted by the demurrer that the laying of tracks and the running of street cars, as proposed by appellee, will " increase the danger to its (appellant's) employes and passengers using its tracks, and to the general public." No one who is familiar with, or who will inspect the situation at the crossings in question, will hesitate as to his conclusion, that if street cars are run across the tracks of appellant at those crossings, at the same grade, there would be great danger to the public, especially to passengers upon the trains of the six railway companies using said tracks as well as to those upon the street cars. Another one of those " deadly crossings " would there exist, more dangerous than any with which we are familiar, and for the removal of which such a persistent and creditable effort has been and is being made, and such vast sums of money have been and are being expended. Unless impelled to do so by well-settled principles and rules of law which control us, we are not disposed to accept the responsibility of approving the establishment of such a dangerous crossing.

A street railway is not an additional burden or servitude on a public street. This is distinctly conceded, and we need cite no authorities upon that question.

Appellant took its license to lay its tracks in the streets in question subject to the right of the general public in said streets. The legally authorized use of them by a street railway is a use by the public. But the appellee has no natural right to the use of said streets such as a private citizen has. It has no right to go upon the streets of the city with its tracks and cars unless or until it is duly and

legally authorized so to do by the proper authorities possessing the power to grant such right.

There is no question made in this case but that appellant corporation is lawfully and rightfully in the possession and enjoyment of its franchise in said streets, and is the absolute owner of the tracks, ties, etc., which it has placed there, and with its lessees is entitled to the exclusive use of its said tracks when used for steam railroad purposes. In the language of our Supreme Court, quoted above, appellant's franchise and right of occupancy of said streets " constitute a property fixed and immovable in its character like realty, and recognized and protected by the law as fully as a fee simple in land."

If the appellee was attempting to lay its tracks upon a lot of land belonging to appellant, without any legal authority or permission so to do, certainly appellant might seek the aid of a court of equity to restrain appellee from so doing. Cobb v. I. & St. L. R. R. Co., 68 Ill. 233.

There is no substantial difference in principle between that case and the case at bar. In that case the railroad company had a legal right to construct a railroad, but had no right to take the property of appellant. In the case at bar the company might have the right to take the property of appellant if it had a legal right to go upon the streets in question, but it has no such right, and has no legal right to enter upon or take or destroy property of appellant, or to construct a street railway over said crossings.

An unlawful taking or encroachment upon this property of appellant constitutes no ground for any proceeding by any officer of the general public. A physical taking or interference with such property, without lawful authority, can be restrained at the instance of appellant, or it must be conceded that the owner of such property can not protect the same from direct damage and injury by a party having no legal right to take or interfere therewith. It must be borne in mind that by the admission of facts in this case, appellee has no legal right to go upon said streets and lay its tracks.

The bill charges that very great and irreparable injury to the property of appellant would result from the construction and operation of a street railway as proposed by appellee. As to whether a court of equity will entertain jurisdiction to protect appellant against such injury by reason of the various charges of peculiar circumstances and facts contained in the bill, we now express no opinion. We are of opinion, however, that the direct injury to the property of appellant would be such that a court of equity will entertain jurisdiction to protect appellant as against a mere wrong-doer.

We understand that the law in this State is well settled, as urged by counsel for appellee, that a street railroad in a public street is no additional servitude. But that is not the question before us. The appellant has fixed property rights and interest in the streets where its tracks are laid; an easement or a sort of lease in perpetuity. The question we have sought to determine is, whether the appellant has a standing in a court of equity to protect that property from physical encroachment and direct injury by, or at the instance of, a mere wrong-doer. The fact that appellee is a street railroad company does not, of itself, authorize it to lay its tracks in any street in Chicago. It has no right to lay a track in any street, unless it first obtain an ordinance authorizing it to do so. If it attempts to lay such a track without such an ordinance, it is a trespasser—a wrong-doer. The question then is, who can complain? The abutting property owner can not. The general public may, by the attorney-general. The city may, but it does not follow that because the general public or the city may, that the party whose property is to receive a direct physical injury can not.

Under the allegations of the bill in this case, the supposed ordinance under which appellee assumes the right to encroach upon the tracks and property rights of appellant, is void. "A void thing is no thing." If such allegations be correct, appellee has no right to lay its tracks over or upon the crossings and tracks of appellant, and appellant

may invoke the aid of a court of equity to protect its property.

We are not unmindful of the fact that there are cases with which the views here expressed are not in harmony, but it seems to us that the conclusion at which we have arrived is in accord with the views of our own Supreme Court, and that the ends of justice are to be thus best subserved.

The decree of the Superior Court dismissing said bill for want of equity is reversed, and the cause remanded. The Superior Court will set aside the order dissolving the injunction granted or issued in said cause so as to leave the same in full force, and take such further steps in said cause as may be necessary or proper, and which shall not be inconsistent with the views here expressed. Reversed and remanded with directions.

MR. JUSTICE SHEPARD.—I can not concur in the result.