Abner V. Wills, Appellee, v. County of Pike, State of Illinois, and Roy Likes, County Superintendent of Highways, Pike County, Illinois, Appellants.

Gen. No. 7,781.

1. EMINENT DOMAIN—*injunction as proper remedy of landowner to prevent unauthorized appropriation.* An injunction is the proper remedy of the owner when an unlawful appropriation of his land is attempted for the use of a public corporation which has not acquired the right of such appropriation by condemnation or otherwise.

2. EMINENT DOMAIN—*jurisdiction to enjoin unauthorized ap-*

*propriation as dependent on want of legal remedy.* It is not necessary that there shall be a want of a remedy at law before a court of equity will take jurisdiction to prevent the taking of private property for public use without compensation.

3. EMINENT DOMAIN—*when action for damages and not injunction is proper remedy for unauthorized public use of private property.* Where no part of complainant's land was taken for public use but only some damage done thereto by the caving of the banks of a highway running through his land below the level of the land, due to the removal of lateral support in improving or maintaining the road, his remedy, if any, was in an action at law for damages, not in equity for an injunction against further injury and for an accounting for damages already suffered.

Appeal by defendants from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1924. Reversed. Opinion filed December 31, 1924.

WILLIAMS & WILLIAMS, for appellants.

WILLIAM MUMFORD, for appellee.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

Appellee, Abner V. Wills, filed his bill of complaint to the April term, A. D. 1923, of the circuit court of Pike county and named the County of Pike, in the State of Illinois, the board of supervisors of said county, the Town of Pittsfield, Roy Likes, county superintendent of highways, and Mike Ducey, Jr., commissioner of highways of said town, and all of the said County of Pike, defendants.

At the time of filing the bill, appellee was the owner of the west half of the northwest quarter of section 28, and 26½ acres of land in the southeast corner of the northeast quarter of section 29, being all that part of said tract lying south and east of the public road, and both tracts situated in said Town of Pittsfield, and appellee had been the owner of said tracts of land for over 25 years. A public road runs from near

the northeast corner of the 80-acre tract, in a south-
westerly direction, and crosses the west line of the
80-acre tract a short distance south of the middle and
continues in the same southwesterly direction and
cuts the south line of the east half of said northeast
quarter of section 29. The 26½-acre tract is trian-
gular in form, the east side being the east line of
the northeast quarter of section 29 and the south
side being the south line of said northeast quarter
and the northwest side is the highway. The road is
about three-quarters of a mile in length, abutting ap-
pellee's lands. It is about 50 feet in width and has
existed from a very ancient time, appellee and others
having traveled over it for a period of 68 years, and
there is found no record of its survey or establish-
ment. From the north end of the road and extending
southwesterly it descends a hill for a distance of
nearly 2,300 feet to a flat strip of ground approxi-
mately 300 feet in width, through the middle of which
flows Six Mile Creek; then the road, continuing in
a southwesterly direction, ascends a hill for about
1,060 feet to the south end of the road. Six Mile
Creek is bridged. The fall in the land from the north
end of the road to the bridge is about 77 feet; the fall
from the south end to the bridge is 46½ feet. The
road is fenced on both sides with woven wire. This is
a public road and one principally traveled in Pike
county. By reason of its long-continued use and great
amount of travel, the roadbed has worn down and is
considerably lower than the natural surface of the
land on either side. By reason of the great fall from
either side to Six Mile Creek, and the travel and the
action of the elements, this road has worn down leav-
ing banks upon either side, and owing to the slope
of the lands the natural elevation of the lands on the
east and south side of the road in both directions
from Six Mile Creek is higher than on the west and
north side of the road, it has been with difficulty

that the road has been kept in repair. Grader ditches have been established on each side of the road for drainage, the distance between the grader ditches being 22 feet, and these have been dug out from time to time to keep the ditches open and effect drainage, and it has followed that there have been cavings in the wall of dirt and embankments, more particularly on the south and east side of the road abutting appellee's lands. There is testimony that a considerable number of years back the appellee voluntarily offered, in accord with the commissioner of highways of the town, to give more land for road purposes on the south and east side of the road for one stretch at least, the particulars of which are unnecessary for this opinion, set his fence a few feet farther into his lands, where the line of the road had been since that time established. Since that time there have been cavings in of land, the embankments of which were not perpendicular but did not have much slope on both the northeast and southwest hills, and the particular circumstance that brought about the filing of the bill in this case was that in the spring of A. D. 1923, the ground for a distance of about 15 rods on the southeast side of the road, going up the hill, adjoining the 26½-acre tract, caved and slid into the adjoining grader ditch. This slide extended back into appellee's land at and near the surface of the ground to points varying in distance inside of appellee's fence, at one place being 10 to 12 feet. The embankment at this place had been about 8 feet high and the grader ditch was 10 feet in width at its base, in a straight line from the fence, and the bank at the top from where it commenced to slope to the base had been 5 feet from the fence. At other places there had been cavings up to the fence, leaving that part of the posts, formerly set in the ground, open to view.

The testimony shows, and it was conceded, that in the spring of A. D. 1923 a great many banks and hill-

sides gave way, caved and slipped off to lower grounds. There was testimony that some years back the appellee had placed stone and rock in the grader ditch, adjoining his lands, with the knowledge of the road authorities. This had checked the cavings but it was found that it interfered with the drainage and the commissioner of highways had removed the stone. In A. D. 1913 this road became a State aid road, but it has never been taken over by the State. It is under the direct control and supervision of the county board (Section 302, ch. 121, Smith-Hurd's Rev. St. 1923) [Cahill's Ill. St. ch. 121, ¶ 210] of Pike county.

There was some testimony tending to show that portions of the dirt and earth sliding and caving from appellee's land into the grader ditch had been used in grading the road, but there was no testimony tending to show that any of the defendants had purposely taken any of the lands or any soil or earth belonging to appellee, or had performed any act in that connection further than to remove the cavings from the grader ditch and get it out of the way and open up the drain, in which process, doubtless, some of the earth and dirt from appellee's land had been used upon the road. Appellee consulted the board of supervisors and the superintendent of highways of said county as to said matters, and failing to effect any settlement of said matters presented this bill of complaint. Appellee's bill of complaint, in effect, sets out the whole situation and charges the defendants with negligence and lack of due care in the method and manner of handling, repairing and draining said road and the injuries resulting to appellee by reason of such negligence and lack of due care on the part of defendants, and appellee, by his bill, presents a method of draining said road by drain tile and other means, which the bill alleges would be practical and economical and do away and prevent washings, cavings and injuries to appellee's lands.

The bill further charges a taking of land and the threat and intent to take further lands by the defendants from appellee for public use, without making due or any compensation therefor. The prayer of the bill is for an injunction to prevent further injury to appellee's lands and an adjustment and accounting for the injuries and damages already suffered.

The defendants answered the bill and there was a hearing before the court and a finding and decree in favor of appellee against the appellants, the County of Pike and the superintendent of highways. The court dismissed the bill for want of equity as against the other defendants. By the decree the appellants were "jointly and severally enjoined from further injuring, destroying or taking the property of the complainant (appellee) for the use of a public highway, without first making compensation to the complainant therefor, or without first acquiring the right to injure, take or destroy said property of the complainant, by condemnation or otherwise," and the appellants were further enjoined from "excavating or removing such soil or other material from the southeast side of the public highway * * * as will naturally and actually injure, destroy or take for a public use the property of the complainant without first making compensation therefor," etc. It was further decreed that appellant, the County of Pike, pay appellee the sum of $10, the amount of damages estimated by the court that appellee had, at that time, sustained. Appellants have brought the record to this court and seek to reverse said decree by this appeal.

Appellants raise some preliminary questions, namely, that the terms of the injunctional order are not sufficiently specific and that "the County of Pike" is not a proper defendant and that this action, if it lies at all, should be against the county board and not against the County of Pike, and on these grounds

urge a reversal of said decree. In the view this court has taken of the case we do not deem it necessary to pass upon any of those questions. It has been the settled law of this State, since the adoption of the constitution in 1870, that "private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." (Section 13, art. 2, Const. 1870.) And it has been held that an injunction is the proper remedy of the owner when an unlawful appropriation of his land is attempted for the use of a public corporation which has not acquired the right of such appropriation by condemnation or otherwise. *Springer v. City of Chicago,* 308 Ill. 364; *Moore v. Gar Creek Drain. Dist.,* 266 Ill. 404; *Bond v. Pennsylvania Co.,* 171 Ill. 508; *Cobb v. Illinois & St. L. Railroad and Coal Co.,* 68 Ill. 235, and *Chicago & W. I. R. Co. v. General Electric Ry. Co.,* 79 Ill. App. 569.

The courts do not require in such cases that there shall be a want of a remedy at law before a court of equity will take jurisdiction. *Cobb v. Illinois & St. L. Railroad and Coal Co., supra.* In *Osborne & Co. v. Missouri Pac. Ry. Co.,* 147 U. S. 248, it was held by Mr. Chief Justice Fuller:

"Where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law in fact inadequate, before restraint will be laid upon the progress of a public work."

And it was further held in the same case:

"Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy when the injury is destructive or of a continuous character or irreparable in its nature; and the appropriation of private property to public use, under color of law, but in fact

without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded *ex debito justitiae.*''

In view of the holding in *Osborne & Co. v. Missouri Pac. Ry. Co., supra,* it was held in *Chicago & W. I. R. Co. v. General Electric Ry. Co., supra:*

''It is clearly implied by this language that where the right of a party is 'to demand compensation,' as distinguished from 'a legal right to recover damages,' that a court of equity will entertain jurisdiction.''

The principle has been firmly imbedded in our law, based upon *Osborne & Co. v. Missouri Pac. Ry. Co., supra,* and many other cases cited by the court in *Doane v. Lake St. El. R. Co.,* 165 Ill. 522, where the court said:

''The principle is, that, the abutting property owner having a complete remedy at law, a court of equity will not, upon his allegation that the ordinance authorizing the construction is illegal, enjoin the defendant from proceeding until the question of illegality can be litigated and determined, but will remit him to his action at law,—and this, it seems to us, is a just and reasonable rule, the enforcement of which will protect the rights of all parties interested. To hold otherwise would be to render impracticable the building and operation of street car lines under our statute.''

This rule has been followed in *Hill v. St. Louis & N. E. Ry. Co.,* 243 Ill. 351; *Metropolitan West Side El. Ry. Co. v. City of Chicago,* 261 Ill. 632, and many other cases. Likewise, it has been the settled ruling of the court in this State, construing the clause of the constitution cited, that consequential damages and damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain Act [Cahill's Ill. St. ch. 47], but he is remitted to his action at law for his damages. *Mercer County v. Wolff,* 237 Ill. 76; *Penn Mut. Life Ins. Co. v. Heiss,* 141 Ill. 35; *Parker*

*v. Catholic Bishop of Chicago,* 146 Ill. 158; *White v. Metropolitan West Side El. R. Co.,* 154 Ill. 620; *Childs & Co. v. City of Chicago,* 279 Ill. 627; *Stetson v. Chicago & E. R. Co.,* 75 Ill. 74; *Peoria & R. I. Ry. Co. v. Schertz,* 84 Ill. 135; *Corcoran v. Chicago, M. & N. R. Co.,* 149 Ill. 297, and *Schroeder v. City of Joliet,* 189 Ill. 53.

In *Childs & Co. v. City of Chicago, supra,* it was conceded that no part of appellant's premises was sought to be taken and that no direct physical damage to its property was contemplated. This case grew out of the erection of a bascule bridge over the Chicago river, on Monroe street, and abutting appellant's leasehold property. It was proposed to raise the grade of Monroe street 14 feet on the west end and 11 feet on the east end of appellant's property, and the city proposed to build in the street a concrete pit, 35 feet in depth, abutting the west 40 feet of appellant's premises and extending practically the entire width of the street in which it was intended to install and maintain motors, machinery and other devices to operate and control the bridge, and it was held that damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain Act, but he is remitted to his action at law for his damages.

*Schroeder v. City of Joliet, supra,* was a case very similar to the case at bar. Plaintiff proved that the city had cut down Exchange street opposite her property and that some of the earth had fallen and more would fall, and she introduced the opinions of witnesses as to how much of the lots would eventually fall into the street and what damage and injury were occasioned to the lots thereby. She contended that the cutting down of the street adjoining her property abutting thereon, and thereby removing the lateral support, was an actual taking of said property and that she was entitled to compensation in money for the property so taken, regardless of benefits resulting

from the improvement. This was an action at law and the court held that the measure of damages was the diminution in value of the property by reason of the act of the city. The court further held that the law will protect an owner of property from aggression on the part of the city, but if, upon a consideration of the effects of the improvement upon the property, there is no damage, neither the constitution nor the law authorizes a recovery, and the court held that this was not deducting benefits from damages, citing *Page v. Chicago, M. & St. P. Ry. Co.*, 70 Ill. 324. As to the facts in this case constituting a taking of private property for public use, the court said:

"It seems clear that no part of plaintiff's lots was taken for public use, within the meaning of the constitution. The city took away its own adjoining property, and some of the dirt and stones of plaintiff's lots have fallen by their own weight for want of lateral support and more will fall. She still holds the title and possession of her lots, which have not been interfered with, and the evidence which she produced was not directed to the value of dirt and stones which had fallen away as property taken by the defendant for public use, but to the injurious consequences to the whole of the lots."

*Schroeder v. City of Joliet, supra*, has been followed in other cases by our courts and whatsoever the law may be as to lateral support, appellee has presented no testimony of negligence or lack of care on the part of appellants nor any testimony showing an intention or desire on the part of appellants to take or even disturb any of appellee's property, and appellee has not presented such a case showing injury in the past, apart from taking land from appellee, or threatened in the future, as would entitle appellee to an injunction on the ground of threatened injury. Appellee's bill is in part a declaration at law for damages for injury, and in part a bill in equity for compensation for lands taken for a public use, for which no compensation has been paid. If the grounds of

equity stated in the bill are supported by the proofs, the bill would stand and the court would settle the entire controversy, regardless of the form of the bill.

Under the authorities cited, it must be held that appellee has been deprived of no land or property taken by appellants or any other authority for a public use, and that there is, therefore, no equity in appellee under the bill and proofs in this case. Whether under the proofs appellee has an action at law, in pursuance of the provisions of section 13, art. 2 of the Constitution, and as construed in *Childs & Co. v. City of Chicago, supra,* and in *Barnard v. City of Chicago,* 270 Ill. 29, this court is not called upon to determine in this suit.

The decree of the circuit court of Pike county is reversed.

*Reversed.*